Giulio NATTA, Piero Pino and Georgio Mazzanti, ex rel. Interference 89,634, Appellants,

v.

Alex ZLETZ and Standard Oil Company of Indiana, Appellees.

No. 17832.

United States Court of Appeals Seventh Circuit.

Nov. 19, 1969.

**634**

Edward S. Irons, Mary Helen Sears, Washington, D. C., Kenneth J. Burns, Jr., Chicago, Ill., for appellants.

William Jentes, Elsie C. Spears, Kirkland, Ellis, Hodson, Chafeetz & Masters, Chicago, Ill., for appellees; Arthur G.

Gilkes, Ralph C. Medhurst, Chicago, Ill., John Kelton, Watson, Leavenworth, Kelton & Taggart, New York City, of counsel.

Before CASTLE, Chief Judge, KNOCH, Senior Circuit Judge, and CUMMINGS, Circuit Judge.

CUMMINGS, Circuit Judge.

This is the fourth appeal in an ancillary action brought by Natta seeking production of documents from Standard Oil Company of Indiana (Standard) to use in patent Interference 89,634.[1]

On January 21, 1969, the district court entered an order requiring Standard to produce various documents, except those protected by the attorney-client privilege or constituting attorneys' work product. In considering that order on Natta's third appeal, we concluded that Standard had not waived either of those objections to documentary production. Our March 10, 1969, order of affirmance provided:

"The principal question presented by this appeal is whether our mandate of January 14, 1969, following the issuance of our opinion reported in 405 F.2d 99, precluded the district court from entering an order excepting from appellant Natta's documentary inspection appellee Standard's attorneys' work product and confidential communications between them and Standard with respect to certain legal advice.

"Upon consideration of the briefs and the appendix, the district court's order of January 21, 1969, is affirmed, but without prejudice to Natta's contesting Standard's work product and privilege claims on the merits before the district court.

"It is further ordered that Standard's motion for leave to file a summary list of privileged documents in this Court is denied."

In April 1969, Standard presented four envelopes of withheld documents to the

---

1. Our prior opinions are reported in 379 F.2d 615 and 405 F.2d 99. The third appeal resulted in the order quoted herein.

district judge. Each envelope contained a separate category of documents.[2] Standard simultaneously submitted lists detailing the author, addressee and nature of the documents to the Court and to Natta's counsel, together with affidavits supporting the objections. In July 1969, Standard submitted to the district judge an additional 42 notebooks and 18 file folders in category 2. These were described to Natta and the court as "personal notes taken by attorneys in connection with Interference 89,634" and were described in further detail in the Category 2 list.

The district court reviewed all these documents *in camera*. Production was denied because of the applicability of the attorney-client privilege or the work product rule established in Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451. In a later clarification of its ruling, the district court explained that it was primarily sustaining work product objections to documents in categories 2 and 3. Both objections were evidently considered applicable to documents in categories 1 and 4. The 42 notebooks and 18 file folders submitted in July were held to be attorneys' work product. Except as to two documents, we affirm the order denying production.

Natta first assails the district court's procedure of basing these rulings on an *in camera* examination of Standard's documents and on the affidavits of its counsel. Natta contends that the *in camera* inspection of the documents in question prevented any meaningful challenge to Standard's claims of privilege and work product.

By reference to Rule 30(b), Rule 34 of the Federal Rules of Civil Procedure permits the district court wide latitude in fashioning protective orders to prevent abuse of discovery. Under Rule 30 (b), a judge may order that

> "* * * secret processes, developments, or research need not be disclosed, or that the parties shall simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the court; or the court may make any other order which justice requires to protect the party or witness from annoyance, embarrassment, or oppression."

We have approved *in camera* review of documents by a master. Olsen Rug Company v. National Labor Relations Board, 291 F.2d 655, 662 (7th Cir. 1961). In Commonwealth Edison Co. v. Allis-Chalmers Mfg. Co., 211 F.Supp. 736, 743 (N.D.Ill. 1962), the court adopted *in camera* inspection of documents after a showing of good cause. In the present case, the district court employed the same procedure adopted by two other district courts and courts of appeals in related proceedings brought by Natta. See Hogan v. Zletz, 43 F.R.D. 308, 315 (N.D. Okla. 1967), affirmed, 392 F.2d 686, 693 (10th Cir. 1968); In re Natta, 410 F.2d 187, 189, note 4 (3d Cir. 1969), certiorari denied sub nom. Montecatini Edison S.p.A. v. E. I. du Pont de Nemours & Co., 396 U.S. 836, 90 S.Ct. 95, 24 L. Ed.2d 87. Natta did not challenge the factual basis of the claims made by Standard even though the lists and affidavits provided sufficient basis for such an attack. As we understand the proceedings below, the *in camera* review was basically confined to the ascertainment of the accuracy of the various descriptions supplied by Standard's counsel. Under the circumstances here, the court might well have ruled upon Standard's claims without use of the *in camera*

---

2. Category 1 was correspondence between outside and Standard's own patent counsel. Category 2 consisted of intra-office memoranda and notes prepared by outside and house patent counsel in connection with interference 89,634. Category 3 was correspondence between standard's outside patent counsel and a technical expert in connection with the Interference. Category 4 was correspondence and intra-office memoranda "relating to the drafting of motions or other legal papers to be filed by Standard and Zletz in Interference 89,634, or relating to papers filed or the testimony given by the other parties to the Interference."

inspection. Cf. Dura Corporation v. Milwaukee Hydraulic Products, Inc., 37 F.R.D. 470, 471 (E.D.Wis. 1965).

Our opinion in Natta v. Zletz, 405 F.2d 99 (7th Cir. 1968), certiorari denied, 395 U.S. 909, 89 S.Ct. 1753, 23 L.Ed.2d 223, expressed serious reservations concerning the appropriateness of *in camera* inspection of documents containing alleged trade secrets which, though not privileged from discovery, are nevertheless entitled to protection. We noted that *in camera* inspection often places too great a burden upon the trial judge and hinders accurate determination of issues of basically adversary nature. At the same time, however, we explicitly recognized that *in camera* proceedings might be warranted in appropriate circumstances. 405 F.2d at p. 101, note 3. Upon the request of Natta's counsel, it might have been preferable for the district court to have held an evidentiary hearing to determine the existence of the work product and privilege claims. Cf. McCormick, Evidence, p. 123 (1954). Such a hearing might not have required disclosure of the contents of the individual documents at all. In this case, however, there is no indication of any prejudice to Natta from the procedures employed, so that the refusal to hold a hearing did not constitute an abuse of the trial court's discretion. Cf. United States v. Battaglia, 410 F.2d 279, 284 (7th Cir. 1969), certiorari denied, 396 U.S. 848, 90 S.Ct. 73, 24 L.Ed.2d 97. Although Standard's counsel should not have been permitted to appear *ex parte* to introduce or explain the documents, we accept the district court's explanation that counsel was restricted to that function at both the one hour session of May 14, 1969, and the two and one-half hour session of July 10, 1969.

Because of the extended period of time already consumed by discovery in this case, and because the documents are before us, the various claims of Natta will be decided here at this time instead of upon remand.

Natta argues that the district court had no discretion to recognize Standard's work product and privilege claims because of the duty of full disclosure mandated by the federal patent laws. The same argument was made and rejected in In re Natta, 410 F.2d 187, 190–191 (3d Cir. 1969), and in Natta v. Hogan, 392 F.2d 686, 691 (10th Cir. 1968). We agree with those courts that the disclosure policies of the patent laws do not preclude the proper application of the attorney-client privilege and work product doctrine. Lear, Inc. v. Adkins, 395 U.S. 653, 668, 89 S.Ct. 1902, 23 L.Ed.2d 610, and other cases relied upon by Natta, do not support its position.

Natta also asserts that Standard's work product and privilege claims are foreclosed because of Standard's "fraud" on the Patent Office. It is well settled that the attorney-client privilege has no application where the communication involves advice in furtherance of a criminal or fraudulent transaction. 8 Wigmore on Evidence, §§ 2298–2299 (rev. ed. 1961). This extends to frauds perpetrated upon the Patent Office, as well as other illegal activities. Ziegler v. Natta, 157 U.S.P.Q. 400 (S.D.N.Y. 1968). In order to defeat the claimed privilege, however, a *prima facie* case of fraud must be shown. In this case, we have carefully weighed Natta's allegations of fraud and Standard's response. In our view, Natta has not made out a *prima facie* showing of fraud, and the policy favoring the disregard of privileges in such an instance does not foreclose Standard from asserting its claims to immunity. If fraud existed, Natta will have an opportunity to demonstrate it in the interference proceeding. Also, at any time the district court shall be satisfied that a *prima facie* case of fraud exists, the production of otherwise privileged documents may be ordered.

Finally, we turn to the merits of the attorney-client and work product rulings of the district court. In review of those

rulings, this Court has inspected each of the impounded documents and concluded that the district court's rulings are substantially correct.

In Radiant Burners, Inc. v. American Gas Association, 320 F.2d 314 (7th Cir. 1963), certiorari denied, 375 U.S. 929, 84 S.Ct. 330, 11 L.Ed.2d 262, we noted that

> "The attorneys' work-product rule announced in Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), remains unimpaired and is something separate and apart from the attorney-client privilege." 320 F.2d at p. 323.

The distinction involves more than nomenclature. Under the rule of *Hickman,* the work product of the attorney has no true privilege and theoretically, at least, is subject to discovery upon an adequate demonstration of "good cause." Cf. 4 Moore, Federal Practice, § 34.08 (1969).

█ The category 1 documents consist of correspondence between house and outside counsel and relate to or anticipate Interference 89,634. They were communications to attorneys for legal advice and assistance. Such communications clearly fall within the ambit of the attorney-client privilege. Dura Corportion v. Milwaukee Hydraulic Products, Inc., 37 F.R.D. 470, 472 (E.D.Wis. 1965); United States v. United Shoe Machinery Corp., 89 F.Supp. 357, 360 (D.C.Mass. 1950); Georgia Pacific Ply-

wood Co. v. United States Plywood Corp., 18 F.R.D. 463, 464 (S.D.N.Y. 1956); Leonia Amusement Corp. v. Loew's, Inc., 13 F.R.D. 438, 441 (S.D.N.Y. 1952) (communications between "home" and "general" counsel). Such communications are essentially between the corporation and its outside attorneys, regardless of the legal qualifications of the "house" counsel. See generally, 8 Wigmore on Evidence, § 2317 (rev. ed. 1961); Note, Waiver of Attorney-Client Privilege on Inter-Attorney Exchange of Information, 63 Yale L.J. 1030, 1031, n. 7 (1954); Simon, The Attorney-Client Privilege as Applied to Corporations, 65 Yale L.J. 952, 970–971, n. 52 (1956).[3]

These letters do not indicate any attempt by Standard to avoid disclosure by funneling papers and documents into the hands of lawyers for custodial purposes. Cf. Radiant Burners, Inc. v. American Gas Ass'n, 320 F.2d 314, 324 (7th Cir. 1963), certiorari denied, 375 U.S. 929, 84 S.Ct. 330, 11 L.Ed.2d 262. It is also immaterial that some of them refer to technical or published information. In re Natta, 410 F.2d 187, 193 (3d Cir. 1969); Natta v. Hogan, 392 F.2d 686, 692 (10th Cir. 1968).

█ The documents of category 2 consist of notes and memoranda, prepared either by Standard's outside patent counsel or by attorneys in the corporation's own patent department directly in connection with their work on Interference 89,634.[4] These memoranda were either

---

3. In the present case there is no need to determine the nature of communications between co-counsel. In Dura Corporation v. Milwaukee Products, Inc., 37 F.R.D. 470, 473 (E.D.Wis.1965), the court held that such communications constituted work product rather than attorney-client communications. This finds support in the language of Hickman v. Taylor, 329 U.S. 495, 508, 67 S.Ct. 385, 91 L.Ed. 451. In either case, insofar as inter-attorney communications or an attorney's notes contain information which would otherwise be privileged as communications to him from a client, that information should be entitled to the same degree of protection from disclosure. To hold otherwise merely penalizes those at-

torneys who write or consult with additional counsel representing the same client for the same purpose. As such it would make a mockery of both the privilege and the realities of current legal assistance. See also proposed Rule 5–03, Rules of Evidence for the United States District Courts and Magistrates (Preliminary Draft, 1969).

4. Included in this category are 42 notebooks and 18 file folders "containing personal notes taken by [Standard] attorneys in connection with Interference 89,634." At the request of the district court, they were submitted to that court for *in camera* inspection on July 10, 1969. Our review of these notebooks and file

addressed to the appropriate file or were limited to intra-office circulation. They contain summaries of conferences between various counsel, legal research and comments upon technical information. As the Supreme Court made clear in Hickman v. Taylor, 329 U.S. 495, 508, 510, 67 S.Ct. 385, 91 L.Ed. 451, such documents fall outside the strict scope of the attorney-client privilege but constitute attorneys' work product, subject to discovery by opposing parties only after an appropriate showing of "good cause."[5] In re Natta, 410 F.2d 187, 193–194 (3d Cir. 1969); Natta v. Hogan, 392 F.2d 686, 693 (10th Cir. 1968). Accordingly, the district court's refusal to order production of these documents was correct.

■■ The category 3 material consists of two letters and diagrams from Dr. Mark, a technical expert retained by Standard as to this Interference,[6] and a reply by Standard's outside patent counsel. The district court felt that these letters constituted attorney's work product and required special demonstration of "good cause" under Hickman v. Taylor, supra. This is quite true of the attorney's letter to Dr. Mark dated December 1, 1965 (Document No. 14778), since it clearly contains the attorney's mental impressions and opinions. The letters and diagrams of Dr. Mark comprising the remainder of the category 3 documents are not to be accorded the same qualified "privilege." They do not constitute the work product of the attorney. Dr. Mark has already testified in the Interference, so that good cause exists for the production of this material, as required under Rule 34. Although recognizing the importance of employing technical assistance in the preparation of such involved cases, we must decline to follow Carpenter-Trant Drill Co. v. Magnolia Petroleum Corp., 23 F.R.D. 257, 261 (D.Neb. 1959), for Standard should not be able to avail itself of both the testimony of this expert and his secret technical advice.

■ The district court properly held that the documents in category 4 constitute either the work product of the attorneys or are privileged communications between the corporation and its attorneys. With the exception of two documents, all the items in this category are intra-office memoranda and correspondence relating to the drafting of motions or other papers to be filed by Standard and Zletz in Interference 89,-634 or relating to papers filed or testimony given by the other parties to the Interference. All these documents are the work product of the various attorneys who drafted them. The remaining two documents are summaries of a meeting held between Standard's outside counsel and appropriate representatives of the corporate client. Just as the substance of the meeting would be privileged from discovery, these summaries, prepared by one of the corporation's representatives, are privileged communications between the corporation and its attorneys.

This Court has considered the other points raised by Natta in this appeal and has concluded that they are without merit. The district court's decision is hereby affirmed, except with respect to Document Nos. 14777 and 14779. We hereby order the immediate production of those letters and diagrams.

Affirmed in part. Reversed in part.

folders discloses that they are what they purport to be and may be treated the same as other documents in category 2.

5. Our earlier rulings did not determine that good cause had been shown by Natta for the production of attorneys' work product. Otherwise, our order of March

10, 1969, would not have provided for the district court's consideration of the work product objections on the merits.

6. Standard points out that in the Interference, it has "already made available [this] expert's 'report'."