**UNITED STATES of America and Wallace S. Oshiro, Special Agent, Internal Revenue Service, Petitioners,**

**v.**

**Earl BROWN, as Partner of Arthur Andersen & Company, Respondent,**

**and**

**Delbert W. Coleman, Intervenor.**

**No. 71 C 2356.**

United States District Court, N. D. Illinois, E. D.

Sept. 11, 1972.

James R. Thompson, U. S. Atty., Chicago, Ill., Jeffrey D. Snow, Trial Atty., Tax Div., Dept. of Justice, Washington, D. C., for petitioners.

William A. Barnett, Chicago, Ill., for intervenor.

## ORDER AND MEMORANDUM OPINION

AUSTIN, District Judge.

On March 5, 1970, pursuant to 26 U. S.C. § 7602 (1964), an Internal Revenue Service summons was served on the accounting firm of Arthur Andersen & Company (hereinafter referred to as "Andersen") demanding the accountant's records pertaining to the IRS investigation of taxpayer Delbert W. Coleman (hereinafter referred to as "Coleman"). Fewer records than requested were turned over to the IRS and Andersen failed to indicate that some documents covered by the subpoena were withheld. In response to a second subpoena on May 26, 1971 Andersen objected to the disclosure of certain documents. On June 7, Andersen filed objections to the IRS summons. At a hearing on October 20, 1971 this court approved a stipulation entered into by the parties by which taxpayer Coleman was permitted to intervene, agreeing to restrict his defenses to that of attorney-client privilege and attorney's work product doctrine. Mr. Earl Brown of Andersen then waived all objections to production of the documents which were in his possession at the time the summons was served upon him. Coleman is therefore the only party presently challenging the summons.

In the stipulation, Coleman agreed to examine all documents in the possession of Andersen relating to Coleman and to turn over to the IRS those documents as to which no objections would be raised. This was subsequently done and most of the documents originally objected to were delivered to IRS during November, 1971. The remaining five documents at issue here are numbered 4, 7, 8, 10 and 11.

On April 3, 1972 a hearing was held with regard to these remaining documents and thereafter post-hearing briefs were filed.

Before considering the objections based upon the attorney-client privilege

and work product doctrine, it is worth noting that this case raises the unhappy spectre of accountants who, when faced with an IRS subpoena, respond to a request for documents with a lack of candor and forthrightness. This is a matter of the professional integrity of the accountant firm, a value which should be held in the highest regard by the firm's members, and the application of which should be held to the highest standards both within a firm and by the profession as a whole. Efforts to avoid obligations pursuant to an IRS summons by silence, and conscious misunderstanding not incompatible with self interest as appears here, should have no place in a profession which has enjoyed some general public reputation for integrity. These comments, expressed with some distress, do not affect our consideration of the issues regarding the attorney-client privilege and work product doctrine presently before the court.

In substance, Coleman argues that each of the five documents is covered by both the attorney-client privilege and the work product doctrine.

### Attorney-Client Privilege

The Supreme Court has never expressed its view of the scope of the attorney-client privilege in tax fraud investigations, or more specifically, to what extent the privilege will protect the workpapers and reports prepared by an accountant at the attorney's direction. The issue was before the Court in Reisman v. Caplin, 375 U.S. 440, 84 S. Ct. 508, 11 L.Ed.2d 459 (1964) but was not decided, since the case was disposed of on procedural grounds.

No accountant-client privilege is recognized by either the common law or the federal courts in tax investigation proceedings. United States v. Balistrieri, 403 F.2d 472, 481 (7th Cir. 1968). Therefore, if communications to an accountant or his reports and workpapers are to be protected, they must be brought within the scope of other categories of privilege, specifically the attorney-client privilege.

Dean Wigmore has stated the attorney-client privilege as follows:

(1) Where legal advice of any kind is sought, (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived. 8 J. Wigmore, Evidence, Sec. 2292 at 554.

There appear to be two key factors in determining whether the attorney-client privilege is applicable to the workpapers of an accountant. First, has the attorney been retained by the taxpayer prior to the preparation of the workpapers and reports by the accountant? Second, have the workpapers and reports been prepared by the accountant at the direction of the attorney?

 Following the rationale of the attorney-client privilege, there is no protection for workpapers prepared prior to the retention of the attorney since there is no communication between client and attorney to be protected and the accountant is not directed by the attorney as his agent. The leading case upholding this view is Bouschor v. United States, 316 F.2d 451 (8th Cir. 1963). The transfer of possession of the workpapers to an attorney who was subsequently retained would not bring them within the privilege under the *Bouschor* reasoning, but United States v. Kovel, 296 F.2d 918, 922 n. 4. (2nd Cir. 1961) left the question open. Whether these documents could be protected under the privilege against self-incrimination need not be considered here. Coleman has expressly limited his objections to the attorney-client privilege and work product doctrine, thereby waiving other grounds for objection.

Where the accountant is employed directly by the attorney the cases appear to extend the protection of the privilege. The earliest case to consider this issue is Himmelfarb v. United States, 175 F.2d

924 (9th Cir.) cert. denied, 338 U.S. 860, 70 S.Ct. 103, 94 L.Ed. 527 (1949) which narrowly construed the attorney-client privilege to exclude the accountant as not essential to an attorney's provision of effective legal representation in a tax fraud case, and therefore found that an accountant's communications with the attorney or client were not privileged. *Himmelfarb* was approved in Gariepy v. United States, 189 F.2d 459 (6th Cir. 1951).

The leading case to expand the scope of the attorney-client privilege to cover employees or agents of an attorney with more than menial or ministerial duties is United States v. Kovel, 296 F.2d 918 (2nd Cir. 1961). It was followed by the Ninth Circuit in United States v. Judson, 322 F.2d 460 (9th Cir. 1963) apparently overruling *sub silentio* its earlier decision in *Himmelfarb*. This view was followed also in Bauer v. Orser, 258 F. Supp. 338 (D.C.N.D.1966). The *Kovel* court stressed the essential criteria for inclusion within the privilege "that the communication be made in confidence for the purpose of obtaining legal advice from the lawyer." 296 F.2d at 922.

A practical consequence of these decisions is the practice that previously retained accountants insist that an attorney be retained and accounting services be provided only at the attorney's direction and to refrain from any communications or service until the attorney is retained. Peterson, "Attorney-Client Privilege in Internal Revenue Service Investigations" 54 Minn.L.Rev. 67 at 91. Further, in order to avoid any question as to the title to the documents, an irrelevant factor discussed in *Bouschor* which confuses the relevance of title to the availability of the attorney-client privilege with its relevance to the validity of a fifth amendment claim of self-incrimination, attorneys will obtain a surrender of title from the accountant for all reports and workpapers. Peterson *supra* at 88.

It appears from the hearing and briefs that Andersen was employed by Coleman in 1957 or 1958, and that the law firm of Marshall, Bratter, Green, Allison and Tucker (hereinafter referred to as "Marshall Bratter") was retained by Coleman during this same period. There is testimony to indicate that Andersen was subsequently employed by another law firm which was retained by Coleman on March 4, 1970 to perform accounting services related to the IRS examination of Coleman's income tax returns. This law firm was subsequently replaced by the Marshall Bratter firm which proceeded to similarly employ Andersen to provide these same services for the examination of the income tax returns of Coleman for the taxable years 1964 to 1969. The terms of this employment are indicated by Intervenor's Exhibits B and C, letters dated May 11, 1970 and June 10, 1970.

*Document No. 4.*

It appears that Document No. 4, a 3-page memorandum, was prepared on August 2, 1967 by R. W. Ruther, an accountant associate of Andersen, at the request of Mr. Brown, a partner of Andersen, for the Andersen files. The document records a summary of telephone discussions and accounting assistance given by Mr. Brown to a member of the Marshall Bratter firm and discussions which he had with Mr. Seiden, an aide of Mr. Coleman, and Mr. Coleman.

From the discussion of the law relating to the attorney-client privilege it appears that the privilege does not apply to Document No. 4. It was not prepared by Coleman's attorney. At this time Andersen was presumably employed directly by Mr. Coleman, but not employed by Marshall Bratter. The privilege does not extend to protect an accountant's papers prepared while employed by a taxpayer. The fact that the accountant is subsequently employed by taxpayer's attorney does not cloak all papers prepared prior to that employment in the attorney-client privilege. Bouschor v. United States, 316 F.2d 451 (8th Cir. 1963). Further, the document was not requested by Marshall Bratter but

was requested by Mr. Brown for inclusion in the files of Andersen.

While intervenor does not raise the point, it appears that Ruther is both an accountant and an attorney. However, any argument that the privilege should protect the memorandum of an accountant-attorney prepared in his capacity as an accountant, without having been retained as an attorney by a client and without a confidential communication flowing directly from client to attorney would be fruitless. In order for communications between an attorney and client to be privileged, the attorney must have been acting in his capacity as a professional legal advisor at the time any disclosures were made. 8 J. Wigmore, Evidence Sec. 2292 at 554. Peterson *supra* 91–97.

### Document No. 7.

Document No. 7 is a 3-page memorandum dated October 7, 1968 prepared by David N. Hurwitz, Esq. for the Marshall Bratter file and a cover letter dated the same day regarding the memorandum written by Hurwitz addressed to F. N. Gerard, Esq. A copy of Document No. 7 was subsequently sent to Andersen for its file.

It appears that the memorandum was a summary of notes and legal judgments made by Hurwitz at an October 2, 1968 meeting attended by Mr. Seiden, an aide of Mr. Coleman, and Mr. Ruther, an associate of the Arthur Andersen firm employed by Mr. Coleman. Andersen was not retained by the Marshall Bratter firm at this time nor did Mr. Ruther of Andersen attend the meeting at the request of Mr. Hurwitz of Marshall Bratter.

This privilege does not concern the issue of whether writings are prepared by counsel in anticipation of litigation. Disclosure is sought from the taxpayer's accountant and not from the taxpayer or his attorney. This document falls outside the scope of the attorney-client privilege. Hickman v. Taylor, 329 U.S. 495, 508, 67 S.Ct. 385, 91 L.Ed.

451 (1947); Natta v. Zletz, 418 F.2d 633, 638 (7th 1969).

### Document No. 8.

Document No. 8 consists of six pages of handwritten notes prepared by Mr. Ruther of Andersen at the same October 2, 1968 conference referred to above relating to Document No. 7. Andersen at this time was employed by Mr. Coleman, not by Marshall Bratter, and Mr. Ruther's presence at the meeting was not requested by Mr. Hurwitz of Marshall Bratter. Mr. Ruther did not act as a messenger or other agent of transmission but only provided whatever accounting assistance was requested of him. Notes taken by an accountant at such a meeting should not be considered privileged simply because an attorney is present at the meeting. There has been insufficient showing here that these notes reflect communications between client and attorney. This document falls outside the scope of the attorney-client privilege.

### Document No. 10.

Document No. 10 consists of a two-page letter dated October 12, 1970 from Mr. Hurwitz of the Marshall Bratter firm to Mr. Ruther of Andersen. Mr. Hurwitz prepared the letter consisting of legal opinions at Ruther's request to assist Ruther in the preparation of Mr. Coleman's 1969 tax return. By letter of June 10, 1970, Intervenor's Exhibit C, Andersen was retained by the Marshall Bratter firm to perform accounting services to aid Marshall Bratter in advising Mr. Coleman.

Document No. 10 could be analyzed as a communication between an attorney and his accountant agent, consisting of legal opinions which should be protected by the attorney-client privilege. United States v. Kovel, *supra*. However, this letter is more properly viewed as a communication between an attorney and a client's accountant made for the purpose of aiding the accountant in preparing the client's income tax return. This letter should not be viewed

as being sent pursuant to an employment relation between attorney and accountant, notwithstanding the employment letters of May 11, 1970 and June 10, 1970, which were limited to the provision of accounting services to the attorney in order to aid the attorney in properly advising the client. Here the letter to the accountant was for the sole purpose of aiding the accountant in preparing an income tax return for the accountant's client.

If this letter is a communication between attorney and his accountant agent pursuant to the employment relationship pursuant to a letter of June 10, 1970, that employment letter should be disregarded in rendering this decision, on the ground that the courts should not condone a policy of cloaking essentially accounting services under the protection of the attorney-client privilege simply because the attorney officially employs the accountant who was previously employed by the client to provide essentially the same services in the preparation of income tax returns.

 An attorney should be privileged to send a letter such as Document No. 10 to the client without fear of disclosure, and to send letters to an accountant agent who is *bona fide* providing accounting services *to the attorney* in order that he can properly advise the client. Subsequent communications by a client to his accountant of advice made by the attorney should be at his own risk of future disclosure unprotected by the attorney-client privilege artificially expanded by the mere formality of changing the form of the accountant's employment relationship. So also, communications between an attorney and an accountant to aid the accountant in preparing an income tax return for the taxpayer should not be protected by the attorney-client privilege because those communications contain legal opinions which if transmitted by the client to the accountant would not be privileged or because there has been a change in the formalities of an employment relationship.

As a legal issue, there is some confusion or uncertainty among the cases as to whether the preparation of income tax returns is the work of an attorney. These cases have arisen usually in the situation where the attorney is also an accountant. In re Fisher, 51 F.2d 424 (S.D.N.Y.1931); Olender v. United States, 210 F.2d 795 (9th Cir. 1954). These cases reject the attorney-client privilege protection for the preparation of income tax returns. However, in Colton v. United States, 306 F.2d 633 (2nd Cir. 1962) cert. denied, 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499 (1963), the *court assumed the applicability of the privilege to an attorney who was not an accountant on the ground that the preparation of tax returns there constituted a very substantial part of the legal services rendered.* The court upheld the privilege as regards confidential papers specifically prepared by the client for the purpose of consultation with "his attorney and any of the firm's memoranda and worksheets 'to the extent of any unpublished expression made by an attorney therein of confidences which had passed between him and his clients,' " but required that the attorney made a showing of the confidential nature of each document. That case did not involve an accountant retained by the attorney.

 An attorney should not be allowed to protect work papers used in preparation of income tax returns which an accountant would be required to disclose, nor should they be protected from disclosure by the artificial vehicle of an employment relationship between attorney and accountant. To the extent that the work papers contain otherwise privileged communications between client and attorney, it should be the burden of the attorney to convince the court of their confidential nature in order to invoke the protection of the privilege. The intervenor has failed to discharge that burden here.

Document No. 10 does not constitute a communication between attorney and client nor between client and attorney's

accountant and is not protected by the attorney-client privilege.

*Document No. 11.*

Document No. 11 consists of 121 pages of notes, letters, and documents prepared by or gathered by the Andersen firm during the period of time when Andersen was retained by Marshall Bratter.

Coleman argues that the whole file is privileged, despite the fact that some of the papers are copies of public documents and correspondence with the IRS itself, on the ground that they were prepared after Andersen was retained by Marshall Bratter and pursuant to that employment relationship.

 It would be unjustifiable to allow a blanket claim of privilege for every document in an accountant's custody to stand unchallenged, simply because an employment relationship had been established prior to the gathering or preparation of the documents. The set of documents in Document No. 11 are in the possession of the accountant, and the government is without practical means to rebut a claim of privilege. It is incumbent upon the intervenor to establish that each document is confidential in nature to some extent beyond their submission for *in camera* inspection. See Colton v. United States, 306 F.2d 633 (2nd Cir. 1962) cert. denied, 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499 (1963).

Here we face a file of 121 pages of miscellaneous papers, a claim of privilege and an employment contract. The court is here expected to make a determination as to the protection of the whole file, Document No. 11, despite the fact that the file includes such documents as letters to the IRS (Document No. 11, p. 18 ff), documents available to the government from Coleman directly (Document No. 11, p. 53 ff), accountant's working papers, letters from state officials (Document No. 11, p. 86) and unmarked photocopies of tax decisions. There has been no serious showing of any kind that the individual documents contained in Document No. 11 are privi-

leged. This court should decline to extend the protection of the attorney-client privilege in such circumstances.

 Document No. 11 does not constitute a communication between attorney and taxpayer, taxpayer and attorney's accountant, or attorney and accountant. There has been no showing that Document No. 11 contains any communications made in confidence for the purpose of obtaining advice from an attorney and is not protected by the attorney-client privilege.

### The Work-Product Doctrine

 The underlying purpose of discovery is to escape from the sporting theory of litigation towards the principle of an open proceeding in which surprise is minimized and the opposing legal and factual positions are fully clarified for the enlightenment of the decision-maker. The general policy of discovery is to facilitate informed investigation by affording access to all relevant factual information. However, in Hickman v. Taylor, 329 U.S. 495, 67 S. Ct. 385, 91 L.Ed. 451 (1947) the Supreme Court granted certain materials, known roughly as the "work product" of the attorney, a qualified immunity from discovery in a judicial proceeding. Since *Hickman* the courts have differed in their views of the underlying rationale for the work-product doctrine and the proper scope of its application, but at its center the work product doctrine rests on the desire to promote the effectiveness of the adversary system by safeguarding the vigorous representation of a client's cause, which the fear that certain materials may be subject to discovery could frustrate.

The Supreme Court has indicated that in a proper case materials may be protected from disclosure pursuant to IRS summons by the attorney-client privilege. Reisman v. Caplin, 375 U.S. 440, 449, 84 S.Ct. 508, 11 L.Ed.2d 459 (1963); Donaldson v. United States, 400 U.S. 517, 532, 91 S.Ct. 534, 27 L.Ed.2d 580 (1970). While there is no holding on this point, it also appears that the

Supreme Court would hold, in the proper case, that materials could be protected from disclosure pursuant to an IRS summons by the work product doctrine. Donaldson v. United States, *supra* 530, 91 S.Ct. 534, 27 L.Ed.2d 580.

In accepting the work product qualification of the general policy of open discovery, the Supreme Court left its application to specific cases to the lower courts. Federal Rules of Civil Procedure, Rule 26(b)(3). And consequently, the scope of this exception has been variously interpreted by the lower courts, as they sought to balance the need for open discovery, particularly in IRS investigations, and the protection of the efficacy of our advocacy system. 4A Moore's Federal Practice, Par. 26.-64(3) (1971). We are here concerned with the enforcement of a summons issued by the IRS, an administrative agency, against a claim of privilege based upon the work product doctrine.

■ While this court is persuaded that the work product doctrine is applicable in IRS enforcement proceedings, the application of the work product doctrine in IRS enforcement proceedings requires that the work product doctrine as promulgated in *Hickman* be tailored to reflect the important policies with which Congress was concerned in passing the Internal Revenue Code of 1954 which includes 26 U.S.C. § 7601 et seq.

The *Hickman* work product doctrine is of judicial formulation unguided or limited by specific legislation. It was formulated in the context of the rules of civil litigation over which the Supreme Court has particular authority and unique responsibilities for supervision. 28 U.S.C. § 2072. The Court recognized that in the hazy frontier of the discovery process, without guidelines set by rule or statute, and attended by widespread controversy among the members of the legal profession, it was necessary to clarify that some materials fall "outside the arena of discovery and contravene the public policy underlying the orderly prosecution and defense of legal claims." *Hickman, supra*, 329 U.S. 510,

514, 67 S.Ct. 393. Quite properly the Supreme Court formulated a doctrine of qualified privilege to protect against obvious attempts " . . . without purported necessity or justification, to secure written statements, private memoranda and personal recollections prepared or formed by an adverse party's counsel in the course of his legal duties." *Hickman, · supra*, 510, 67 S.Ct. 393. In *Hickman* the Court took steps to establish a delicate balance between safeguards to preclude unwarranted excursions into the privacy of an attorney's work and the public policy which supports broad and open discovery, thereby protecting and promoting the effectiveness of the adversary system. *Hickman, supra*, 497, 67 S.Ct. 385, 91 L.Ed. 451.

There are several factors which persuade this court that the work product doctrine stated in *Hickman* in the specific context of civil litigation must be tailored to the specific context of the IRS investigation in order to avoid unnecessary conflicts with other firmly established public policies. First, there is the general policy that access to information is productive of justice in administrative proceedings and investigations as it is in both civil and criminal litigation. Second, the importance of IRS investigations to the integrity and equity of the system of taxation in this country cannot be denied, particularly in a period in which many attacks are made against the integrity and equity of many of our institutions.

■ Third, the intent of Congress in this particular legislation is unequivocal. 26 U.S.C. §§ 7601 and 7602. Section 7601 of the Internal Revenue Code of 1954, 26 U.S.C. § 7601, directs the Secretary or his delegate "to the extent he deems it practicable" to cause Treasury Department officers or employees "to proceed . . . and inquire after and concerning all persons . . . who may be liable to pay any internal revenue tax . . . " As the Supreme Court said in *Donaldson*, "The section (Section 7601) thus flatly imposes upon the Secretary the duty to canvass and to

inquire." *Donaldson, supra,* 400 U.S. 523, 91 S.Ct. 539. Pursuant to the mandate in Section 7601, Section 7602 authorizes the Secretary "to examine any books, papers, records, or other data which may be relevant or material to such inquiry." 26 U.S.C. § 7602(1). Unlike the case of *Hickman,* there is here a clear statute which reflects the strong congressional desire to further IRS inquiries. While the statute cannot be fairly said to overrule the qualified privilege based on the work product doctrine by its silence, courts should scrutinize and give the most careful consideration to any application of the work product doctrine which would have the effect of impairing the effectiveness of such clearly mandated administrative investigations.

Fourth, in the usual circumstance where the work product privilege issue is raised in civil or criminal litigation, the party seeking disclosure has general and usually specific knowledge of the form and subject matter of the documents in question and can make specific argument to the court in an effective manner based upon this knowledge. 4A Moore's Federal Practice, Par. 34.08 (1971). However, in an IRS investigation wherein inquiry is made after and concerning persons who may be liable to pay any interval revenue tax, the government is under a great handicap to argue effectively that documents, of which they have only the scarcest knowledge resulting from a refusal by a taxpayer, an attorney, or as here an accountant, to produce documents pursuant to a summons, are necessary to effective resolution of the inquiry. During an IRS investigation, the issues are fluid and not clarified to the extent they are when a complaint or indictment and answer are on file. Within broad limits, even the data which is necessary to such an inquiry is uncertain. Further, the data is wholly or largely in the control of the taxpayer. Therefore, to hold the government to the same standard of "good cause" to overcome the claim of the qualified work product privilege as is required in civil litigation is unwarranted. See 4A Moore's Federal Practice, Par. 26.64[3] and [4]. To impose such a burden on the government would be unfair and pose a serious obstacle to the proper and effective execution of their administrative duties pursuant to statutory mandate.

■ Considering the policy of open investigation, the particular importance of IRS investigations, the specific statutory mandate, the inappropriateness of the ordinary standard of "good cause" in civil litigation, and the essential value of the work product doctrine, it is necessary to tailor the application of the work product doctrine to the circumstances of the IRS investigation by requiring the government in the context of an IRS summons enforcement proceeding to show "good cause" by making a good faith declaration that the documents are believed necessary to the determination of the taxpayer's correct tax liabilities and that it is believed that the information contained therein cannot be obtained from any other source. The taxpayer or other party should then have the opportunity to show the court that the contents of the particular documents at issue are not related to or necessary to the determination of the taxpayer's tax liabilities or that the information included therein can be obtained from other sources without undue hardship. The effect of this modification of the work product doctrine as applied to IRS enforcement proceedings will be to protect legitimate work product materials consistent with the purpose of the doctrine in the *Hickman* context of civil litigation, while avoiding unnecessary conflict with the statutory language of 26 U.S.C. §§ 7601, 7602 and furthering its underlying purpose. Compare 4A Moore's Federal Practice, Par. 26.64[3].

We turn now to the particular documents at issue here:

*Documents 4 and 8.*

Documents No. 4 and No. 8, as described above, were prepared by mem-

bers of the Andersen firm during a period when that firm was employed directly by the taxpayer, Mr. Coleman. Both appear to reflect conversations in which members of the Marshall Bratter firm participated.

Intervenor urges upon this court the reasoning in Ceco Steel Products Corp. v. H. K. Porter Co., 31 F.R.D. 142 (N.D.Ill.1962) by arguing that the notes and memoranda made by a taxpayer's accountant which include the substance of statements made by the taxpayer's attorney is conceptually indistinguishable from notes and memoranda prepared by the attorney himself or presumably by an accountant-agent of the attorney.

However, there is no evidence that these notes and memorandum were made at the request of the attorney, nor did the attorney even see the documents at issue here prior to the issuance of the summons. With regard to both Documents No. 4 and No. 8, the accountant, Andersen, was not employed by the attorney in any sense. As to Document No. 8, the attorney did not initially request the presence or assistance of the taxpayer's accountant at the conference. While the conversations of Mr. Brown and Mr. Ruther which formed the basis for Document No. 4 prepared by Mr. Ruther, did include conversations with the taxpayer's attorney they also included conversations with the taxpayer and his agent.

These documents have only a superficial and tenuous relationship to the work product characteristics which concerned the Supreme Court in *Hickman*. To uphold the protection of the work product doctrine as to these documents would be to undermine the purpose of open discovery, hamper unnecessarily the investigative efforts of the IRS, and create by indirection an accountant work product privilege for all documents prepared pursuant to the accountant-taxpayer relationship which have any modicum of association to the taxpayer's attorneys.

■ Documents Nos. 4 and 8 do not constitute the work product of an attor-

ney or his agent, but rather the work product of taxpayer's accountants which is not privileged under the work product doctrine. The documents should be produced pursuant to the summons.

*Document No. 7.*

Document No. 7 is not included within the scope of the work product privilege.

■ While Document No. 7 includes conclusions of an attorney, it is clear from the first paragraph of the document that it was not prepared in anticipation of litigation but in anticipation of particular investigations by certain state and federal agencies. Therefore, intervenor has failed to show a necessary element of a work product defense. While it is clear that the test whether the work product privilege applies is not whether the litigation has actually begun but whether the documents may be fairly said to have been prepared or obtained in anticipation of litigation, the scope of application of the work product doctrine must be carefully tailored to the circumstances of the particular case and with due consideration for the fundamental purposes of the policies involved. *Hickman, supra,* 329 U. S. 511, 512, 67 S.Ct. 385, 91 L.Ed. 451. See Arney v. George A. Hormel and Co., 53 F.R.D. 179, 181 (D.Minn.1971) and cases cited therein.

To adopt the intervenor's interpretation of the *Hickman* phrase "eye toward litigation" would be to expand the scope of the work product doctrine to include as prepared in anticipation of litigation every scrap of paper related to a matter with which a tax attorney is concerned. Such a step would ignore both the carefully tailored concern of the Supreme Court in formulating the work product doctrine in the context of civil litigation and the specific circumstances surrounding an IRS investigation.

Document No. 7, unlike those considered in Natta v. Zletz, 418 F.2d 633, 637–638 (7th Cir. 1969), is a memorandum which was not limited to intraoffice circulation. Copies of Document No. 7 were sent to another attorney

whose relationship to the Marshall Bratter firm is unexplained, and to the taxpayer's accountant, Arthur Andersen. Further, it appears that this was not a summary of a conference called by Mr. Seiden, the taxpayer's aide, to which Mr. Hurwitz and Mr. Ruther of Andersen were invited. This court need not reach the issue of waiver since this document falls initially outside the work product doctrine. Waiver of privilege is not involved with regard to Document No. 7, but if it were so involved, the standard for waiver here should reflect the unique circumstances of an IRS investigation. Intervenor argues that the disclosure of Document No. 7 to another attorney and to the taxpayer's accountants should not be considered a waiver of the work product privilege in that these disclosures are not inconsistent with maintaining secrecy from possible adversaries, citing Stix Products, Inc. v. United Merchants and Manufacturers, Inc., 47 F.R.D. 334 (S.D.N.Y.1969). However, the facts surrounding this dicta in *Stix Products* are altogether different from those presented here. Further the policy judgment there expressed, even if worthy of some consideration in the context of civil litigation, should not be considered heavily in the context of an IRS investigation where there is a specific statutory mandate as expressed in 26 U.S.C. §§ 7601 and 7602. Donaldson v. United States, 400 U.S. 517, 524, 525, 91 S.Ct. 534, 27 L.Ed.2d 580 (1970); Reisman v. Caplin, *supra*, 375 U.S. 445, 84 S.Ct. 508, 11 L.Ed.2d 459.

■■■ The importance of IRS investigations to the integrity and equity of the system of taxation in this country, and the importance of access to the documents of taxpayers should also be given consideration by a court in considering the proper privilege defenses raised in an enforcement proceeding pursuant to 26 U.S.C. § 7402(b). Even if, *arguendo*, intervenor did claim a valid work product privilege with regard to Document No. 7, the government has met its burden of "good cause" in the context of an IRS investigation. As discussed above, the government is in a position so as to be unable to rebut effectively the arguments of privilege or to assert effectively the "good cause" required in civil litigation for a party to overturn an otherwise valid claim of privilege based on this doctrine. While it appears that the Supreme Court would consider that the work product doctrine is applicable to a proceeding to enforce an Internal Revenue Summons, this does not mean that the IRS should be bound by the same "good cause" requirement applied in civil litigation as indicated in Hickman, *supra*, 329 U.S. 511, 67 S.Ct. 385, 91 L.Ed. 451; Republic Gear Co. v. Borg-Warner Corp., 381 F.2d 551, 557, 558 (2nd Cir. 1967); *Arney, supra*, 53 F.R.D. 181; Federal Rules of Civil Procedure, Rule 26(b)(3). Sufficient "good cause" in the context of an IRS investigation would be a good faith belief that the documents are necessary to the determination of a taxpayer's correct tax liabilities and that the information contained therein cannot be obtained from any other source. The taxpayer would then have the opportunity to show the court that the contents of the documents at issue were not related to or necessary to the determination of a taxpayer's correct tax liabilities or that such information included therein which was so related or necessary could be obtained from other sources without undue hardship. This modified standard of "good cause" to overcome a claim of privilege based upon the work product doctrine reflects the importance of IRS investigations, the intent of Congress in 26 U.S.C. §§ 7601 and 7602, the purposes of open discovery generally in our legal system, the unique burdens upon the government in rebutting a claim of privilege in this IRS investigation context, and the legitimate purposes underlying the qualified privilege based upon the work product doctrine.

■■■ Therefore, in summary, this document falls outside the scope of protection of the work product doctrine as formulated in *Hickman* and as applied in *Natta*. If, however, *arguendo*, this doc-

434

ument were considered as falling within the doctrine, the court holds that the doctrine is waived by its disclosure to accountants for the taxpayer and expressly declines to apply the dicta in *Stix*. Further, if this document is within the work product doctrine and the privilege is not waived, this court holds that under the standard of "good cause" appropriate to IRS enforcement proceedings, the government has met its burden of good cause and defeats the claimed privilege. This document should be produced pursuant to the summons.

*Document No. 10.*

 This document was prepared by Mr. Hurwitz of Marshall Bratter at the request of Mr. Ruther of Andersen to assist Mr. Ruther in the preparation of Mr. Coleman's 1969 federal income tax and gift tax return.

Pursuant to the letter of June 10, 1970 by which the Marshall Bratter firm retained the services of Andersen, Andersen was to perform necessary accounting services in order that Marshall Bratter could properly advise Mr. Coleman in connection with the preparation of his tax returns for the 1969 taxable year. However, it appears here, as may be the broader general practice between tax attorneys and taxpayer's accountants, that the purpose of the change in a formal employment relationship from one between taxpayer and accountant is to indirectly expand the scope of protection provided by the attorney-client and work product privileges in any subsequent IRS investigation. Such bootstrap protection must be carefully scrutinized by a court in an enforcement proceeding pursuant to 26 U.S.C. § 7402(b).

 At the hearing, the purpose of Document No. 10 was set forth:

(By Mr. Miller)

Q And can you tell us what the purpose of that document No. 10 was?

A (By Mr. Hurwitz) Yes. Mr. Ruther requested the document from me to assist him in the prep-

aration of Mr. Coleman's 1969 tax return. (Transcript p. 48).

It appears clear that Andersen as taxpayer's accountant was preparing the income tax return, and sought the opinion of the taxpayer's attorney, despite the formal employment relationship of Andersen by Marshall Bratter. A fortuitous and formalistic employment relationship should not in itself expand the scope of a work product privilege which would not otherwise be the case. *Natta, supra*, 418 F.2d 637.

This court would avoid the difficult task of determining whether any particular services rendered are essentially those of an accountant or an attorney for purposes of deciding whether the protection of the work product privilege should be extended to certain documents. In the past these slippery distinctions have failed to produce useful standards, in the effort to apply the attorney-client privilege. In re Fisher, 51 F.2d 424 (S. D.N.Y.1931); Olender v. United States, 210 F.2d 795 (9th Cir. 1954); Colton v. United States, 306 F.2d 633 (2nd Cir. 1962) cert. denied, 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499 (1963); United States v. Threlkeld, 241 F.Supp. 324 (W.D.Tenn.1965); Canaday v. United States, 354 F.2d 849 (8th Cir. 1966); See *Peterson, supra*, 91–97. In analyzing this particular factual situation with a view to determining the applicability of the work product privilege, it is unnecessary to focus on the nature of the relationship between attorney and client, or the services being rendered. The question to be asked is whether written material was prepared by an attorney in anticipation of litigation and if it was so prepared, has the government met its burden of good cause to justify the refusal to apply the work product privilege.

Here the evidence indicates that this document was prepared by Mr. Hurwitz, taxpayer's attorney to assist taxpayer's accountants in the preparation of tax returns. The document itself closes with the offer of further such assistance. The document itself expressly responds

to a request for the attorney's views on the proper treatment of certain transactions in connection with the preparation of the taxpayer's 1969 tax return. The evidence does not indicate that this document was prepared in anticipation of litigation. This could only be inferred in a general sense which would apply to every document prepared by or collected by an attorney retained by a taxpayer. The court finds that Document No. 10 was not prepared in anticipation of litigation and therefore the protection of the work product doctrine does not apply to this document. Document No. 10 should be produced pursuant to the summons.

If, *arguendo,* this document could be considered within the protection of the work product doctrine, following the analysis set forth with regard to Document No. 7 above, the government has shown sufficient "good cause" in its good faith belief that the documents are necessary to the determination of the taxpayer's correct tax liabilities and that the information contained therein could not to their knowledge be obtained from any other source.

*Document No. 11.*

Document No. 11 consists of 121 pages of miscellaneous documents gathered by Andersen after their formal employment by Marshall Bratter.

A review of the documents contained in Document No. 11 indicates nothing which was gathered in anticipation of litigation. It appears that these documents were gathered by Andersen in the course of preparing various tax returns for the taxpayer for the year of 1969. The testimony of Mr. Ruther supports this.

(By Mr. Miller)

Q . . . Are those documents (Documents No. 10 and No. 11) which you or others at Arthur Andersen prepared in connection with Mr. Coleman's 1969 income tax return? (sic)

(By Mr. Ruther)

A Exhibit 11 is, yes. (Transcript, p. 102).

The evidence introduced at the hearing indicates that there is presently tax court litigation with respect to Mr. Coleman for the 1967 taxable year, and with respect to Enness Realty Corporation for the year 1968. There was no testimony that the documents included in Document No. 11 were gathered in anticipation of this litigation relating to 1967 and 1968 because those documents made reference only to 1969 tax return. There was no testimony that Mr. Hurwitz anticipated litigation with regard to 1969 except in the general sense that a tax attorney anticipates litigation with reference to any matter which he handles. Such general anticipations are not coincident with the limited scope of the work product privilege set forth in *Hickman* or with the special requirements of IRS investigations. If adopted by the courts, such a theory as to the scope of the work product doctrine would have the effect of protecting any materials of a tax attorney, and by artful and early employment of taxpayer's accountant would have the effect of creating an accountant work product privilege. The court finds that there has been no showing that Document No. 11 was prepared in anticipation of litigation within the meaning of *Hickman.*

Even assuming, *arguendo,* that Document No. 11 could be considered as being prepared in anticipation of litigation within the meaning of *Hickman,* and that the gathering of these materials by the accountant could on these facts be treated as the work product of the attorney, it is evident that the government has met its burden of "good cause" to rebut the qualified privilege established by *Hickman.* These documents are clearly the working files of the accountant in preparing the tax returns. The balancing of the evidence introduced by the Intervenor, and the "good cause" shown by the government as discussed with reference to Document No. 7, in the context of the court's *in*

**436**

*camera* review of the documents is resolved in favor of the government.

Document No. 11 should be produced pursuant to the summons.

Documents Nos. 4, 7, 8, 10 and 11 are not protected by either the attorney-client privilege or by the work product doctrine, and must be produced pursuant to the summons.