478 F.2d 1038
 73-1 USTC P 9427
 UNITED STATES of America and Wallace S. Oshiro, Special
Agent, Internal Revenue Service, Petitioners-Appellees,
v.
Earl BROWN, as Partner of Arthur Andersen & Company,
Respondent-Appellant, and Delbert W. Coleman,
Intervenor-Appellant.
 Nos. 72-1865, 72-1946.
 United States Court of Appeals,
Seventh Circuit.
 Argued Feb. 20, 1973.
Decided May 9, 1973.
Rehearing Denied June 28, 1973.
 
 Daniel S. Greenfield, Charles H. Miller, New York City, Charles W. Boand, George W. Thompson, William A. Barnett, Chicago, Ill., for respondent-appellant.
 James R. Thompson, U. S. Atty., William T. Huyck, Asst. U. S. Atty., Chicago, Ill., Scott P. Crampton, Asst. Atty. Gen., Richard Farber, Atty., Tax Div., Dept. of Justice, Washington, D. C., for petitioners-appellees.
 Before SPRECHER, Circuit Judge, GRANT*, Senior District Judge, and GORDON**, District Judge.
 SPRECHER, Circuit Judge.
 
 
 1
 On September 11, 1972, the district court for the Northern District of Illinois, following an in camera inspection and an evidentiary hearing, ruled that the accounting firm of Arthur Andersen & Company was required to comply with a summons issued by the Internal Revenue Service to produce certain documents concerning its client, Delbert Coleman.[1] Coleman, allowed to intervene in this action by the district court, appealed the court's order requiring production of the Andersen documents. Earl Brown, a partner of Arthur Andersen, has appealed, asking this court to disapprove certain unfavorable references to the Andersen firm made by the district court in its opinion, 349 F.Supp. 420. On October 25, 1972, this Court entered an order staying enforcement of the district court order pending disposition of the appeals.
 
 
 2
 This action began with an Internal Revenue Service investigation of Coleman for the years 1965 through 1969. Pursuant to 26 U.S.C. Sec. 7602[2] a summons was served on Arthur Andersen & Company, demanding all records pertaining to Coleman. A second summons was issued on the firm on May 26, 1971, after Andersen refused to produce a portion of these records. Andersen thereafter formally protested that some of the required documents were protected by the attorney-client privilege and attorney's work product doctrine.[3] A preliminary hearing was held in the district court and Andersen agreed to turn over additional documents. Three more documents were produced subsequent to the trial in this case. This appeal concerns only two remaining documents.
 
 
 3
 The first of these (Document 7) is a three-page memorandum, dated October 7, 1968, prepared by David N. Hurwitz, an attorney and member of the law firm of Marshall, Bratter, Greene, Allson & Tucker, which represented Coleman, as well as a cover letter regarding the memorandum. The memorandum summarizes notes and legal judgments made by attorney Hurwitz at a meeting attended by Mr. Seiden, an aide to Coleman, Mr. Ruther, an associate of Arthur Andersen, and Hurwitz, on October 2, 1968.
 
 
 4
 The second (Document 8) consists of six pages of handwritten notes prepared by Andersen's Ruther at the October 2, 1968 meeting concerning the accounting assistance rendered by Ruther at that meeting.
 
 
 5
 The purpose of the October meeting was to discuss the tax consequences of a potential Coleman business transaction. The IRS states as its reason for seeking the documents a need to gain a full understanding of the details of this transaction and thereby to ascertain whether Coleman properly reported the tax consequences.
 
 I.
 
 6
 The classic statement of the attorney-client privilege is the formulation in 8 Wigmore, Evidence Sec. 2292:
 
 
 7
 "(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived."
 
 
 8
 It is clear from this definition that neither document is protected by the privilege. In regard to the handwritten notes taken by accountant Ruther concerning accounting assistance, although the attorney-client privilege may in some instances extend to communications to accountants providing assistance to an attorney, "(w)hat is vital to the privilege is that the communication be made in confidence for the purpose of obtaining legal advice from the lawyer. If what is sought is not legal advice but only accounting service, . . . or if the advice sought is the accountant's rather than the lawyer's, no privilege exists." United States v. Kovel, 296 F.2d 918, 922 (2d Cir. 1961) (emphasis in original). In this case the accounting firm was retained by the taxpayer and not the attorney, and the accountant's presence at the October meeting was requested by the taxpayer's assistant and not by the attorney. We agree with the district court that "[n]otes taken by an accountant at such a meeting should not be considered privileged simply because an attorney is present at the meeting." We also agree that there has been an insufficient showing that these notes reflect communications between an attorney and his client.
 
 
 9
 Nor is Document 7 covered by the attorney-client privilege. In the first place, there is severe doubt that this document, held in the files of the accountant and not in those of the attorney, retained any confidential nature. See Couch v. United States, 409 U.S. 322, 335, 93 S.Ct. 611, 619, 34 L.Ed.2d 548 (1973), where the Supreme Court stated that "there can be little expectation of privacy where records are handed to an accountant, knowing that mandatory disclosure of much of the information therein is required in an income tax return." Furthermore, the Supreme Court held in Hickman v. Taylor, 329 U.S. 495, 508, 67 S.Ct. 385, 91 L.Ed. 451 (1947), that the privilege did not attach to "memoranda, briefs, communications and other writings prepared by counsel for his own use in prosecuting his client's case; and it is equally unrelated to writings which reflect an attorney's mental impressions, conclusions, opinions or legal theories." The district court found that the document in question summarized attorney Hurwitz' notes and legal judgments made at the October meeting. Our agreement with that conclusion disposes of this question.
 
 
 10
 The contention that the documents are nevertheless protected from discovery by the attorney's work product doctrine is equally without merit. The Supreme Court in Hickman v. Taylor, supra, held that papers prepared by an attorney which were unprotected by the attorney-client privilege might still be immune from production under the work product doctrine. Under this doctrine, documents written in preparation for litigation are immune from discovery absent an adequate showing of necessity. One court has held that the power of the Commissioner of Internal Revenue to investigate the records of taxpayers makes doubtful the relevancy of the work product privilege enunciated in Hickman to a proceeding for the enforcement of the Commissioner's summons. United States v. McKay, 372 F.2d 174, 176 (5th Cir. 1967). The Supreme Court has also noted the strong Congressional evidence of intent that the Commissioner of Internal Revenue not be impeded in his investigation of taxpayers:
 
 
 11
 "Section 7601 of the 1954 Code, 26 U.S.C. Sec. 7601, directs the Secretary or his delegate 'to the extent he deems it practicable' to cause Treasury Department officers or employees 'to proceed . . . and inquire after and concerning' all persons 'who may be liable to pay any internal revenue tax.' The section thus flatly imposes upon the Secretary the duty to canvass and to inquire." Donaldson v. United States, 400 U.S. 517, 523, 91 S.Ct. 534, 539, 27 L.Ed.2d 580 (1971).
 
 
 12
 We think the work product doctrine does have applicability to a proceeding for the enforcement of an Internal Revenue summons. The strong public interest as expressed by Congress in enforcement of the Internal Revenue Act may, however, be relevant in considering the degree of necessity which need be shown prior to the enforcement of an order to produce.
 
 
 13
 The district court adopted this viewpoint and held that, assuming the taxpayer otherwise stated a valid work product claim, the government had met its initial burden of showing "good cause" in expressing a good faith belief that Document 7 was necessary for a correct determination of the taxpayer's liabilities and that the information contained therein could not be obtained from any other source. The court permitted the taxpayer to rebut this belief by seeking to prove to the court that the documents were not essential. The court found that sufficient good cause had been shown with regard to Document 7 and our examination of the materials leads us to the same result.
 
 
 14
 Document 8 is clearly outside the scope of the work product doctrine. That document was prepared by an accountant giving accounting advice to his client, the taxpayer. United States v. McKay, supra, 372 F.2d at 177.
 
 
 15
 We conclude that the district court correctly determined that Documents 7 and 8 should be produced.
 
 II.
 
 16
 The second appeal in his case, brought by Earl Brown, a partner of Arthur Andersen & Company, seeks this court's disapproval of the district court's statements in its opinion that the accountants involved responded to the IRS summons with a lack of candor and forthrightness and that they turned over fewer than all papers required by the IRS summons. Brown argues that the district court's statements dealt with matters which were neither issues in the case nor necessary for resolution of those issues; that Brown was not an active participant in the case as a result of a stipulation approved by the court and thus presented no evidence and interrogated no witnesses; and that the evidence in the case does not support the statement.
 
 
 17
 We agree that the district court comments were improper surplusage in the context of this case. All relevant documents were produced in response to the summons involved in this case, subject to a determination that no privilege existed, and the court's comments related to Andersen's response to an earlier summons, judicial enforcement of which was never sought. Although the merits of the accounting firm's response to the earlier summons have been argued by both sides, we do not feel it necessary to dwell on the issue. Since the Andersen firm responded properly to the only summons before the district court, the comments relating to other irrelevant matters should not have been made.
 
 
 18
 The judgment appealed from is affirmed as modified.
 
 
 
 *
 Senior District Judge Robert A. Grant of the Northern District of Indiana is sitting by designation
 
 
 **
 District Judge Myron L. Gordon of the Eastern District of Wisconsin is sitting by designation
 
 
 [1]
 Jurisdiction in the district court was invoked pursuant to 26 U.S.C. Secs. 7402(b) and 7604(a)
 
 
 [2]
 Section 7602 of the Internal Revenue Code of 1954 provides that:
 "For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax . . . the Secretary . . . is authorized-
 (1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry;
 (2) To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary or his delegate may deem proper, . . . to produce such books, papers, records, or other data, . . ."
 
 
 [3]
 There is no accountant-client privilege in the federal system. Couch v. United States, 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973)