**UNITED STATES, Plaintiff,**

v.

**Joseph L. SUMME, Defendant.**

**No. 1008.**

United States District Court
E. D. Kentucky,
Covington Division.

Aug. 5, 1962.

B. T. Moynahan, Jr., U. S. Atty., Moss Noble, George I. Cline, Asst. U. S. Attys., Lexington, Ky., for plaintiff.

Frank J. Richter, James T. Dewan, Cincinnati, Ohio, for defendant.

SWINFORD, District Judge.

On June 23, 1960 Richard DeVoto, special agent for the Internal Revenue Service issued a summons for defendant to appear at the Federal Building in Covington on July 5, 1960 to testify about the 1957 and 1958 tax returns of Henry and Freda Kottmyer and to bring with him all books and papers which he used in the preparation of the returns or which might explain the entries on them. The purpose of the investigation contemplated by this summons is to determine whether the Kottmyer returns are fraudulent. Defendant appeared before agent DeVoto on July 1, 1960 but refused to

identify certain of the books and papers and to answer certain of the questions on the ground that he is an attorney for the Kottmyers and the questions were directed at confidential communications.

The present action has been filed pursuant to 26 U.S.C.A. § 7402(b) by the United States Attorney who seeks an order of the court compelling full compliance by defendant with the summons.

Agents of the Internal Revenue Service are empowered by section 7602 of the Code to issue process for the production of books, papers, notes, memoranda, worksheets, and other data and to require the presence of taxpayers and others for the purpose of testifying pertinent to tax liability. It is upon this section that Agent DeVoto relied in issuing the summons.

The government seeks to prevail on the broad proposition that the attorney-client privilege has no application to an examination under section 7602 and is supported to some extent in this thesis by the character of the proceedings under this section. It is not the purpose of one of these hearings to determine the rights and liabilities of the parties but only to secure information. Torras v. Stradley, N.D.Ga.1952, 103 F.Supp. 737. Moreover the case of Falsone v. United States, 5th Cir. 1953, 205 F.2d 734, was decided upon a theory that would support the government. There an accountant relying on a Georgia statute making communications between client and accountant privileged refused to answer certain questions at a hearing similar to the one involved here. The court held that privilege inapplicable to the tax investigation on the ground that there is no common law privilege as to communications of this sort, that the only way of reaching Georgia law on the subject is through rule 43(a), F.R.Civ.P. 28 U.S.C.A. which makes state rules of evidence applicable to federal court proceedings in certain cases and that since the tax investigation is not a court proceeding, there is no basis for applying rule 43(a).

■ At the outset the question of the government's right to examine the tax-payers' books can be eliminated from the case. There is no privilege with respect to the books or associated papers. In re Blumenburg, S.D.N.Y.1960, 191 F. Supp. 904. But as to the right of Agent DeVoto to compel the defendant's testimony uninhibited by the attorney-client privilege there is considerable doubt.

■■ First of all the attorney-client privilege is derived from the common law and does not depend upon the existence of a statute. 58 Am.Jur., Witnesses sec. 461. Accordingly the logic underlying the Falsone case as it proceeds from the statutory origin of the accountant-client privilege cannot be translated to this case. What must first be determined is whether the federal courts recognize the attorney-client privilege in cases in which they are not following the law of some other jurisdiction and it seems fairly clear that they do. See Baldwin v. Commissioner of Internal Revenue, 9th Cir. 1942, 125 F.2d 812, 141 A.L.R. 548; United States v. United Shoe Machinery Corporation, D.Mass.1950, 89 F.Supp. 357; Securities and Exchange Commission v. Harrison, D.C.D.Col.1948, 80 F. Supp. 226. Accordingly if the testimony of defendent were being sought in this court, the privilege would receive full play. This is not a complete answer however for as the court in Falsone pointed out, the fact that the power of this court to compel attendance is sought does not of itself carry all of the evidentiary rules of the federal courts into the statutory hearing. See also F. T. C. v. St. Regis Paper Co., 7th Cir. 1962, 304 F.2d 731. Consequently it must be ascertained whether and to what extent the privilege operates in the investigative proceeding independently of how it might operate in the court.

The closest holding on the question of privilege at a 7602 investigation is in the case of Chapman v. Goodman, 9th Cir. 1955, 219 F.2d 802. The court there approved an order of the district court permitting an attorney to invoke the privilege as to specific questions asked at the investigation with the expectation that the internal revenue agent would there-

after refer the question of privilege to the court for rulings on the propriety of individual questions. The reasoning of the decision begins with the premise that the source of law on questions of privilege at a section 7602 proceeding is reached through the Civil Rules. Baird v. Koerner, 9th Cir. 1960, 279 F.2d 623, asserts that a lawyer testifying at an internal revenue investigation may decline questions on the ground of privilege but holds that the particular question was not within the privilege. The rationale here is that the attorney-client privilege is an incident of the power of the state to create lawyers and that the application and scope of the privilege is therefore governed by state law. The court reinforces this conclusion with the observation that the civil rules govern questions of evidence at a 7602 hearing and that these refer to the state law. Gretsky v. Basso, D.Mass.1955, 136 F.Supp. 640, seems to intimate that privilege can only be found in state law and concludes that state evidentiary restrictions do not apply to a federal administrative proceeding. The decision in the case of In re Albert Lindley Lee Memorial Hospital, N.D.N.Y.1953, 115 F.Supp. 643, is that privilege is governed by state law and turns upon a finding that the particular questions asked are not guarded by any privilege under the state law. In view of the cases recognizing the attorney-client privilege as a part of the federal common law, it seems unnecessary to solve any choice of law problem. Possibly the cases which get into state law can be explained by the fact that confidential relationships other than attorney-client were involved. Falsone concerned an accountant while Gretsky v. Basso and Albert Lindley Lee involved physicians. The existence of a common law privilege as to these was not established and it may therefore have been necessary to do some searching for a source of law.

Perhaps the most forcible precedent is Securities and Exchange Commission v. Harrison, supra. This was a court action seeking obedience to a subpoena issued in connection with a fact-finding investigation by the Securities and Exchange Commission into an offering of stock in the Kaiser-Frazer Corporation. The defendant had declined certain questions on the ground that they intruded upon the attorney-client privilege. The court dwelt at length upon the question of whether the privilege might have been vitiated by the fact that the communications concerned a fraudulent lawsuit but expressed no doubt that the privilege obtains generally in investigative proceedings. Of further interest is McMann v. Securities and Exchange Commission, 2d Cir. 1937, 87 F.2d 377, in which Judge Learned Hand assumed that investigative proceedings under the Securities Act of 1933, 15 U.S.C.A. § 77a et seq. are subject to testimonial privileges but held that the particular relationship asserted there was not covered by a privilege.

It is significant that all of these cases are grounded upon the assumption that privilege applies as well in investigative proceedings as in court proceedings. In some of the cases the court concludes that the privilege does not apply to the special circumstances. In others the privilege is found by reasoning that will not apply universally. But there is no case that squarely holds that there is no privilege as to communications between attorney and client in connection with one of these investigations. It is therefore necessary that the court proceed on the premise that the attorney-client privilege must be recognized at this investigation. The terms of the order that the court is asked to issue presents a further problem, to some extent involving the scope of the privilege.

First, the privilege can in proper circumstances be invoked as to communications for the purpose of filling in an income tax return. The criteria for determining whether a matter falls within the privilege were enumerated in United States v. United Shoe Machinery Corporation, supra, in the following terms:

"(1) the asserted holder of the privilege is or sought to become a

client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client."

There is nothing about the service of a lawyer in filing an income tax return that would necessarily take it out of these qualifications. The court has not been shown that income tax questions are any less demanding of a lawyer's ability than other subjects. The government cites Olender v. United States, 9th Cir. 1954, 210 F.2d 795, and United States v. Chin Lim Mow, N.D.Calif.1952, 12 F.R.D. 433 as supporting a contrary position. Olender was decided upon a finding that the witness concerned was both a lawyer and an accountant and that the taxpayer had gone to him for accounting services. This fact is not present in the instant case. Chin Lim Mow turned upon a finding that the evidence involved routine business transactions and not upon the fact that the communications concerned the preparation of an income tax return. The fact that a nonlawyer could perform whatever service the communication is related to does not mean that the communication cannot be privileged. Ellis-Foster Company v. Union Carbide and Carbon Corporation, D.N.J.1958, 159 F.Supp. 917, reversed on other grounds, 3 Cir., 284 F.2d 917.

Notwithstanding the importance of guarding full and free discussion between lawyer and client and preserving the privilege intact, we must recognize that this exception to the usually accepted rules of evidence must be kept in the narrow confines of its own reason for being.

The following quotation from 8 Wigmore on Evidence (3d. ed.) sec. 2192, pp. 64, 67, as cited in the Falsone case is an excellent statement of the law. I quote:

"For more than three centuries it has now been recognized as a fundamental maxim that the public (in the words sanctioned by Lord Hardwicke) has a right to every man's evidence. When we come to examine the various claims of exemption, we start with the primary assumption that there is a general duty to give what testimony one is capable of giving, and that any exemptions which may exist are distinctly exceptional, being so many derogations from a positive general rule. * * *

" * * * The investigation of truth and the enforcement of testimonial duty demand the restriction, not the expansion, of these privileges. They should be recognized only within the narrowest limits required by principle. Every step beyond these limits helps to provide, without any real necessity, an obstacle to the administration of justice."

It would not be proper in this proceeding to give to the agents unlimited authority to examine Mr. Summe. I must limit my judgment and order to the express questions which the witness declined to answer, I assume they are those questions enumerated 19, 20, 22, 23, 24 and 27 in the photostat filed with the complaint as an exhibit. It is my judgment that none of these questions are within the rule admitting of privilege between Mr. Summe and his client except question 27. He should be called and is required to answer all of the questions except 27.

An order in conformity with this memorandum is this day entered.