**UNITED STATES of America and John J. Anetakis, Special Agent, Internal Revenue Service,**

v.

**James C. HIGGINS.**

**Civ. A. No. 535.**

United States District Court
S. D. West Virginia,
Beckley Division.

Nov. 3, 1966.

W. Warren Upton, Asst. U. S. Atty., Charleston, W. Va., for petitioners.

James C. Higgins and John H. Gorman, Beckley, W. Va., for respondent.

FIELD, Chief Judge.

This is a proceeding under Section 7604(a) of the Internal Revenue Code of 1954 to enforce the production of certain records pursuant to an Internal Revenue Summons served on the respondent under the authority of Section 7602 of the Internal Revenue Code of 1954.

The summons issued on October 19, 1965, sought production of all accounting workpapers and schedules pertaining to all individual and partnership income tax returns of A. A. and Icie Farmer as well as similar papers prepared by respondent, or his firm with respect to Tabor Realty, Inc., Farmer and Akers, Inc., and A. A. Farmer, Inc. In his response the respondent stated that he and his associate, John H. Gorman, were retained in March, 1965, by A. A. Farmer for services in the preparation of the joint tax return of A. A. Farmer and Icie Farmer, his wife, for the year 1964. It further appears that on or before April 21, 1965, A. A. Farmer employed respondent's firm to represent Farmer and his wife, as well as the subject corporations, incident to an examination being conducted by the Internal Revenue Service. The response further indicates that respondent did assist in the preparation of income tax returns for Farmer and Akers, Inc., for the period from 1961 until the liquidation of this corporation on June 30, 1964. Respondent did not assist in the preparation of the returns of the other two corporations for the years 1960 through 1964.

The controversy incident to the summons herein is provoked primarily by the fortuitous circumstance that respondent Higgins is not only an attorney at law but is also a certified public accountant. Under these circumstances, the Government contends that respondent was performing basically accounting functions and accordingly his workpapers incident to that function are not protected by any attorney-client privilege. On the other hand, the position of the respondent is to the effect that the summons would require him to produce papers delivered to him, prepared by him or otherwise in his custody as an attorney at law, and that his qualifications as a certified public accountant are merely incidental and should have no operative bearing upon his position in this matter.

Both the respondent and the Government seek support for their respective positions in the case of Colton v. United States, 306 F.2d 633 (2d Cir. 1962). This case at the circuit level must be read in the light of the district court's opinion in the same case sub nom. In Re Colton, 201 F.Supp. 13 (S.D.N.Y. 1961). In that case at the district level, the court apparently was considering certain specific questions which had been

propounded to the respondent and which he declined to answer. The court saw fit to require that answers be made to certain of the questions, but did, however, recognize the validity of the attorney-client privilege. In affirming on appeal the Second Circuit stated:

"There can, of course, be no question that the giving of tax advice and the preparation of tax returns—which unquestionably constituted a very substantial part of the legal services rendered the Matters by the Colton firm —are basically matters sufficiently within the professional competence of an attorney to make them prima facie subject to the attorney-client privilege. See United States v. Kovel, 296 F.2d 918 (2 Cir. 1961). But, although the word 'communications' must be broadly interpreted in this context, see 8 Wigmore, Evidence § 2306 (McNaughton rev. 1961), the authorities are clear that the privilege extends essentially only to the substance of matters communicated to an attorney in professional confidence."

In addition to the *Colton* case, respondent relies also on the case of United States v. Judson, 322 F.2d 460 (9th Cir. 1963). This case dealt not only with the attorney-client privilege, but also recognized the impact of the Fifth Amendment on situations such as those presented here. In recognizing the constitutional privilege as well as that of attorney and client, the court concluded its opinion at page 468 with the following language:

"Few areas of the law draw so many individuals in contact with governmental powers as does federal taxation. Yet this branch is one of the thickest of the law's 'bramble bush.' The ramifications of tax law are often a stubborn challenge to the most expert legal practitioner. The very nature of the tax laws requires taxpayers to rely upon attorneys, and re-quires attorneys to rely, in turn, upon documentary indicia of their clients' financial affairs. In light of these realities a very real danger would be created if we were to sustain the government's position. That danger was apparent to Judge Murphy in Application of House, supra, when he spoke of 'heavy penalties.'

"The government has at its disposal inquisitorial powers and administrative procedures which it may invoke at its pleasure. If the government's position were sustained here, those powers could be utilized to stimulate a taxpayer's consultation with his attorney and the predictable transfer of his records. The government's powers could then be utilized to compel disclosure of those matters by the attorney whenever the taxpayer were not available to utter the magic words. In our judgment, the inherent power thus to compel indirectly an individual's self-incrimination is curbed by the Fifth Amendment as effectively as the power to compel the same result directly."

In the light of these authorities, it is my conclusion that the respondent's position is well taken in regard to the workpapers and schedules of A. A. and Icie Farmer, individually, which in my opinion are protected under both of the privileges involved. I am further of the opinion that the papers and schedules pertaining to Tabor Realty, Inc., and A. A. Farmer, Inc., are properly protected from production under the attorney-client privilege. It would appear, however, that the papers and schedules incident to the returns which were prepared by respondent for Farmer and Akers, Inc., during the several years of its corporate life were primarily of an accounting nature and are therefore not protected by the attorney-client privilege and should be produced by respondent pursuant to the summons.