**UNITED STATES of America and James W. Meade, Jr., Special Agent of the Internal Revenue Service, Petitioners,**

v.

**J. Donald SCHMIDT, Empire Office Center, Camp Hill, Pennsylvania et al., Respondents.**

Civ. No. 71–398.

United States District Court,
M. D. Pennsylvania.

June 19, 1973.

As Amended Aug. 30, 1973.

S. John Cottone, U. S. Atty., James W. Walker, Asst. U. S. Atty., Scranton, Pa., Louis J. Lombardo, Dept. of Justice, Washington, D. C., for petitioners.

John G. Williams, Keith A. Clark, Shumaker, Williams & Clark, Harrisburg, Pa., for respondents.

## MEMORANDUM

SHERIDAN, Chief Judge.

Petitioners, the United States of America and James W. Meade, Jr., Special Agent of the Internal Revenue Service, seek judicial enforcement of an Internal Revenue summons pursuant to 26 U.S.C.A. §§ 7402(b) and 7604(a). The purpose of the summons is to elicit testimony from J. Donald Schmidt, a Certified Public Accountant, with respect to the tax liabilities of Vincent C. McCue for the taxable years 1966 through 1969, and regarding the preparation of the 1969 income tax return of Vincent C. and Elizabeth A. McCue.

A rule was issued requiring Schmidt to show cause why the relief requested should not be granted. Subsequently, a hearing was held at which testimony was taken, briefs were filed, and oral argument was made. Both taxpayers and Shumaker, Williams & Placey, taxpayers' counsel, have been permitted to intervene as respondents.

On or about July 31, 1969, Vincent McCue retained the law firm of Shumaker, Williams & Placey of Harrisburg, Pennsylvania, in order to obtain legal advice regarding certain unspecified business transactions and income tax matters. Thereafter, counsel decided that the services of an accountant were necessary to allow them to properly advise their client. Accordingly, on April 1, 1970, they retained Schmidt, Nenninger & Company, an accounting firm, to assist them in the accumulation of business and financial information required to provide accurate and complete legal advice to Vincent McCue.

The agreement between the law firm and the accounting firm provided, inter alia, that accounting services were to be performed at the written request of counsel; that, except as otherwise directed, the accountants were to bill the law firm monthly for services rendered during the preceding month; and that information obtained by the accountants while performing the services contemplated by the agreement was to be confidential.

In November 1970, Special Agent Meade was assigned to a preliminary investigation of the tax liability of Vincent McCue. Since Schmidt possesses information relevant thereto, Meade issued a summons requiring him to appear and to testify. At the appointed time and place, Schmidt appeared with counsel and testified to a limited extent; he also set forth the legal bases of his refusal to be more expansive. This proceeding followed.

Respondents, in opposing enforcement of the summons, rely upon Schmidt's alleged right to assert both the attorney-client privilege and Vincent McCue's privilege against self-incrimination. In addition, they contend that petitioners are proceeding with malice and in bad faith pursuant to a course of conduct intended to harass Vincent McCue. Accordingly, they request the court to order petitioners to make available to them all information possessed by the Internal Revenue Service of any alleged wrongdoing by McCue to allow them to evaluate petitioners' motives in this ac-

tion and in any future action relating to him.

■■ Although judicial enforcement of a summons issued with malice and in bad faith would be an abuse of the court's process,[1] a proper exercise of discretion[2] requires that respondents' request for discovery be denied because it is too broad[3] and because they have not established that discovery is necessary to afford them a meaningful opportunity to challenge the summons. United States v. Benford, 7 Cir. 1969, 406 F.2d 1192, 1194.

■ Mere allegations of improper purpose are insufficient;[4] and, at the enforcement hearing at which respondents had an ample opportunity to interrogate Special Agent Meade, no testimony was adduced tending to establish that the summons was issued for the purpose of harassment. Under these circumstances,[5] discovery properly is denied. United States v. National State Bank, 7 Cir. 1972, 454 F.2d 1249, 1252; United States v. Cote, D.Minn.1971, 326 F.Supp. 444, 451, aff'd, 8 Cir. 1972, 456 F.2d .142; *accord,* United States v. Bowman, 3 Cir. 1970, 435 F.2d 467, 469

1. United States v. Powell, 1964, 379 U.S. 48, 58, 85 S.Ct. 248, 13 L.Ed.2d 112.

2. United States v. Bell, 9 Cir. 1971, 448 F.2d 40, 42; United States v. Held, 6 Cir. 1970, 435 F.2d 1361, 1366, cert. denied, 1971, 401 U.S. 1010, 91 S.Ct. 1255, 28 L.Ed.2d 545; United States v. Ruggeiro, 9 Cir. 1970, 425 F.2d 1069, 1071, cert. denied, 1971, 401 U.S. 922, 91 S.Ct. 863, 27 L.Ed.2d 826; United States v. Ahmanson, 9 Cir. 1969, 415 F.2d 785, 787; United States v. Howard, 3 Cir. 1966, 360 F.2d 373, 381; United States v. White, S.D.Tex.1971, 326 F.Supp. 459, 463, aff'd, 5 Cir. 1973, 477 F.2d 757; United States v. Troupe, W.D.Mo.1970, 317 F.Supp. 416, 422, aff'd, 8 Cir. 1971, 438 F.2d 117; United States v. Moriarty, E.D.Wis.1967, 278 F.Supp. 187, 188.

3. *Accord,* United States v. Roundtree, 5 Cir. 1969, 420 F.2d 845, 851–52 & n. 14; *see* United States v. Howard, 3 Cir. 1966, 360 F.2d 373, 381.

4. United States v. National State Bank, 7 Cir. 1972, 454 F.2d 1249, 1252; United States v. Salter, 1 Cir. 1970, 432 F.2d 697, 700.

5. The burden of persuasion on the issue whether the court's process is being abused rests on the party resisting compliance with the summons. United States v. Powell, 1964, 379 U.S. 48, 58, 85 S.Ct. 248, 13 L.Ed.2d 112; United States v. Roundtree, 5 Cir. 1969, 420 F.2d 845, 851. It would be manifestly unfair to deny that party discovery of the information required to meet his burden. However, the countervailing consideration is the desirability of expediting the administrative investigatory process. United States v. Salter, 1 Cir. 1970, 432 F.2d 697, 700–01.

In attempting to harmonize competing interests, one suggested procedure is to hold a discovery hearing, prior to the enforcement hearing, at which the Special Agent may be examined regarding the purposes of the investigation; if, at its conclusion, there remains a substantial question in the court's mind about the validity of the Government's purpose, discovery may be granted. United States v. Salter, 1 Cir. 1970, 432 F.2d 697, 700–01; United States v. White, S.D.Tex.1971, 326 F.Supp. 459, 463, aff'd, 5 Cir. 1973, 477 F.2d 757; *see* United States v. Troupe, W.D.Mo.1970, 317 F.Supp. 416, 418, 422, aff'd, 8 Cir. 1971, 438 F.2d 117.

However, the Third Circuit has held that it is not an abuse of discretion to deny an oral motion for prehearing discovery when the agent is present and available for questioning at the enforcement hearing itself. United States v. Bowman, 3 Cir. 1970, 435 F.2d 467, 469; United States v. Erdner, 3 Cir. 1970, 422 F.2d 835. Although this action is distinguishable because the discovery request was made prior to the enforcement hearing in the written return to the rule to show cause, the timing of the motions in *Bowman* and in *Erdner* does not appear to have been dispositive.

Instead, both cases implicitly endorse the principle that the ultimate criterion is whether discovery is necessary to afford a meaningful adversary hearing of legitimate challenges. United States v. Benford, 7 Cir. 1969, 406 F.2d 1192, 1194. Since respondents had a full opportunity to examine Special Agent Meade at the enforcement hearing and introduced no evidence of improper purpose, neither discovery nor a discovery hearing should be required because there is no reason to believe that they might be able to present a meaningful challenge to enforcement of the summons on the issue of bad faith.

& n. 3; United States v. Erdner, 3 Cir. 1970, 422 F.2d 835.

■■ Furthermore, since I find that the summons issued in good faith as a necessary aid in determining the tax liability of Vincent McCue, respondents have not met their burden to establish that its enforcement would be an abuse of the court's process.[6] See `United States v. Powell, 1964, 379 U.S. 48, 58, 85 S.Ct. 248, 13 L.Ed.2d 112; United States v. Roundtree, 5 Cir. 1969, 420 F. 2d 845, 851.

Respondents' next contention is that Schmidt may refuse to comply with the summons because his testimony might incriminate Vincent McCue.[7]

This presents an interesting question since Schmidt, in his role as accountant, claims to be within the scope of the attorney-client privilege, and the relation-ship of attorney and client[8] may involve a constitutionally-protected expectation of privacy. See Couch v. United States, 1973, 409 U.S. 322, 350–351, 93 S.Ct. 611, 34 L.Ed.2d 548 (Marshall, J., dissenting); United States v. White, 5 Cir. 1973, 477 F.2d 757, 764–67 (Ainsworth, J., dissenting).

■ However, the fifth amendment privilege is a personal privilege, an important element of which is compulsion directed against the one who himself would be incriminated if forced to reveal information. Couch v. United States, 1973, 409 U.S. 322, 328–329, 93 S. Ct. 611, 34 L.Ed.2d 548; United States v. Egenberg, 3 Cir. 1971, 443 F.2d 512, 516. Since Schmidt does not contend that he would incriminate himself by testifying, and since, absent special circumstances,[9] a summoned party may not refuse to testify for the reason that he might incriminate someone else,[10] it

6. Several days prior to completion of this memorandum, respondents' counsel submitted to the court a copy of a letter from the Mid-Atlantic Regional Counsel of the Internal Revenue Service indicating that the Intelligence Division has recommended the prosecution of Vincent McCue and offering McCue the opportunity to appear at a conference in the Chief Counsel's Office to furnish any information he desires.

A summons may not be issued solely to gather information for use in a criminal proceeding. Donaldson v. United States, 1971, 400 U.S. 517, 533–36, 91 S.Ct. 534, 27 L.Ed.2d 580. However, respondents have never contended that the sole purpose is to obtain evidence for prosecution. Instead, the possibility was raised only insofar as it relates to the issue whether Schmidt can be compelled to reveal information which might incriminate McCue.

In addition, a recommendation from the Intelligence Division to a Regional Office does not establish that the exclusive purpose of the investigation is criminal within the meaning of the principle enunciated in Donaldson. United States v. Billingsley, 10 Cir. 1972, 469 F.2d 1208; see United States v. Maciel, D. R.I.1972, 351 F.Supp. 817, 821–22; cf. United States v. Kyriaco, C.D.Cal. 1971, 326 F.Supp. 1184. But cf. United States v. Weingarden, E.D.Mich.1971, 333 F.Supp. 474.

7. U.S.Const. amend. V.

8. If their relationship were merely that of accountant and client, neither of them could assert the client's privilege against self-incrimination to justify Schmidt's refusal to testify with respect to McCue's records, see Couch v. United States, 1973, 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548. But cf. Couch v. United States, 1973, 409 U.S. 322, 338–44, 93 S.Ct. 611, 34 L.Ed.2d 548 (Douglas, J., dissenting); United States v. Tsukuno, N.D.Ill.1972, 341 F.Supp. 839, or any accounting workpapers pertaining to him. See United States v. Bowman, M.D.Pa. 1964, 236 F.Supp. 548, aff'd, 3 Cir. 1966, 358 F.2d 421.

9. See, e. g., Stuart v. United States, 5 Cir. 1969, 416 F.2d 459, 462–63.

10. Rogers v. United States, 1951, 340 U.S. 367, 371, 71 S.Ct. 438, 95 L.Ed. 344; McAlister v. Henkel, 1906, 201 U.S. 90, 26 S.Ct. 385, 50 L.Ed. 671; Hale v. Henkel, 1906, 201 U.S. 43, 69–70, 26 S.Ct. 370, 50 L.Ed. 652; Bursey v. United States, 9 Cir. 1972, 466 F.2d 1059, 1071; United States v. Seewald, 2 Cir. 1971, 450 F.2d 1159, 1162, cert. denied, 1972, 405 U.S. 978, 92 S.Ct. 1206, 31 L.Ed.2d 253; United States v. Goldfarb, 6 Cir., 328 F.2d 280, 282, cert. denied, 1964, 377 U.S. 976, 84 S.Ct. 1883, 12 L.Ed.2d 746; Saffo v. United States, 8 Cir. 1954, 213 F.2d 131, 133; United

would be inconsistent with the policy of the privilege to allow him to assert it.

Even assuming he were an attorney who could raise his client's privilege to resist a summons seeking production of McCue's records,[11] his own records,[12] or any accounting workpapers in his possession,[13] he nevertheless could not refuse to testify on the ground that McCue might be incriminated. United States v. Goldfarb, 6 Cir., 328 F.2d 280, 282, cert. denied, 1964, 377 U.S. 976, 84 S.Ct. 1883, 12 L.Ed.2d 746; United States v. Conte, D.Del.1969, 300 F.Supp. 73, 75; cf. Brody v. United States, 1 Cir., 243 F.2d 378, 387 n. 5, cert. denied, 1957, 354 U.S. 923, 77 S.Ct. 1384, 1 L. Ed.2d 1438.

Moreover, any reasonable expectation of privacy between attorney and client is more properly safeguarded by the attorney-client privilege.[14] In contradistinction to the privilege against self-incrimination, it provides a noncon-stitutional basis for determining the precise scope of the protection which ought to be granted this unique relationship; in addition, its application avoids distorting the essentially-personal self-incrimination privilege. Petersen, Attorney-Client Privilege In Internal Revenue Service Investigations, 1969, 54 Minn.L.Rev. 67, 84–86; Note, The Attorney And His Client's Privileges, 1965, 74 Yale L.J. 539, 541–45, 552; see United States v. Schoeberlein, D.Md.1971, 335 F.Supp. 1048, 1055; Comment, Internal Revenue Code Summons Enforcement And The Accountant, 1964, 2 Duq. L.Rev. 261, 274–75.

Finally, respondents argue that Schmidt's testimony is protected by the attorney-client privilege.

Since questions of privilege arising in an action for judicial enforcement of an Internal Revenue summons should be resolved pursuant to federal law,[15] neither Pennsylvania's account-

States v. Johnson, 3 Cir. 1947, 165 F.2d 42, 50, cert. denied, 1948, 332 U.S. 852, 68 S.Ct. 355, 92 L.Ed. 421; United States v. Conte, D.Del.1969, 300 F.Supp. 73, 75; United States v. Learner, S.D. Ill.1969, 298 F.Supp. 1104, 1108; 8 Wigmore, Evidence § 2259 (McNaughton rev. 1961); cf. Brody v. United States, 1 Cir., 243 F.2d 378, 387 n. 5, cert. denied, 1957, 354 U.S. 923, 77 S.Ct. 1384, 1 L.Ed.2d 1438.

11. *Compare* United States v. Judson, 9 Cir. 1963, 322 F.2d 460, 463–68; Colton v. United States, 2 Cir. 1962, 306 F.2d 633, 639, cert. denied, 1963, 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499; *and* 8 Wigmore, Evidence § 2307 (McNaughton rev. 1961), *with* United States v. Schoeberlein, D.Md.1971, 335 F.Supp. 1048, 1055 *and* United States v. Merrell, N.D.N.Y. 1969, 303 F.Supp. 490, 493.

12. *But see* United States v. Merrell, N.D. N.Y.1969, 303 F.Supp. 490, 493; United States v. Conte, D.Del.1969, 300 F.Supp. 73, 75.

13. *Compare* United States v. Higgins, S.D. W.Va.1966, 266 F.Supp. 593 *and* Application Of House, N.D.Cal.1956, 144 F. Supp. 95, 100, *with* Bouschor v. United States, 8 Cir. 1963, 316 F.2d 451, 458–59; United States v. White, S.D.Tex. 1971, 326 F.Supp. 459, 462–63, aff'd, 5 Cir. 1973, 477 F.2d 757; *and* United

States v. Boccuto, D.N.J., 175 F.Supp. 886, appeal dismissed, 3 Cir. 1959, 274 F.2d 860. *See generally* United States v. Fisher, E.D.Pa.1972, 352 F.Supp. 731, 733.

14. The attorney-client privilege and the privilege against self-incrimination are distinct privileges. United States v. Willis, M.D.Ga.1955, 145 F.Supp. 365, 366; see Grant v. United States, 1913, 227 U.S. 74, 79, 33 S.Ct. 190, 57 L.Ed. 423; United States v. Seewald, 2 Cir. 1971, 450 F.2d 1159, 1162 & n. 2, cert. denied, 1972, 405 U.S. 978, 92 S.Ct. 1206, 31 L.Ed.2d 253; United States v. Schoeberlein, D.Md.1971, 335 F.Supp. 1048, 1055; United States v. Learner, S.D.Ill.1969, 298 F.Supp. 1104, 1108.

15. 10 Mertens, Law Of Federal Income Taxation § 61.09 (1970 rev.); Petersen, Attorney-Client Privilege In Internal Revenue Service Investigations, 1969, 54 Minn.L.Rev. 67, 70–80; see United States v. Finley, 5 Cir. 1970, 434 F.2d 597; Colton v. United States, 2 Cir. 1962, 306 F.2d 633, 636, cert. denied, 1963, 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed. 2d 499; United States v. Schmidt, M.D. Pa.1972, 343 F.Supp. 444; United States v. Tsukuno, N.D.Ill.1972, 341 F.Supp. 839; United States v. Troupe, W.D.Mo. 1970, 317 F.Supp. 416, 420–421, aff'd, 8 Cir. 1971, 438 F.2d 117; United States

ant-client privilege [16] nor any other privilege recognized in federal court [17] allows Schmidt to refuse to testify in his role as accountant. However, there are circumstances in which an accountant may be within the scope of the attorney-client privilege,[18] the elements of which are set forth as follows:

"(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived." 8 Wigmore, Evidence § 2292 (McNaughton rev. 1961).

The burden of establishing the foregoing rests on the claimant against disclosure,[19] and the operative rule of construction is that the privilege ought to be confined within the narrowest limits consistent with its policy to promote freedom of consultation of legal advisers by clients. United States v. Goldfarb, 6 Cir., 328 F.2d 280, 282, cert. denied, 1964, 377 U.S. 976, 84 S.Ct. 1883, 12 L.Ed.2d 746; United States v. Summe, E.D.Ky.1962, 208 F.Supp. 925, 928; 8 Wigmore, Evidence § 2291 (McNaughton rev. 1961).

One corollary of the prerequisite that a professional legal adviser be consulted in his capacity as such [20] is that the privilege does not apply when a person who merely happens to be an at-

---

v. Schletz, N.D.Ill.1968, 68–2 U.S.Tax Cas. 87, 555. *But see* United States v. Ladner, S.D.Miss.1965, 238 F.Supp. 895; *cf.* Baird v. Koerner, 9 Cir. 1960, 279 F.2d 623. *See generally* Federal Trade Commission v. St. Regis Paper Company, 7 Cir. 1962, 304 F.2d 731, 734–35.

16. 63 P.S. § 9.11a. United States v. Berkowitz, E.D.Pa.1973, 355 F.Supp. 897, 902; United States v. Bowman, M.D.Pa.1964, 236 F.Supp. 548, 550, aff'd, 3 Cir. 1966, 358 F.2d 421; *accord,* United States v. Tsukuno, N.D.Ill.1972, 341 F.Supp. 839; United States v. Schoeberlein, D.Md.1971, 335 F.Supp. 1048, 1057 n. 13; *see* Couch v. United States, 1973, 409 U.S. 322, 335, 93 S.Ct. 611, 34 L. Ed.2d 548.

17. Couch v. United States, 1973, 409 U.S. 322, 335, 93 S.Ct. 611, 34 L.Ed.2d 548; United States v. Berkowitz, E.D.Pa.1973, 355 F.Supp. 897, 902; United States v. Brown, N.D.Ill.1972, 349 F.Supp. 420, 425; United States v. Schmidt, M.D.Pa. 1972, 343 F.Supp. 444; United States v. White, S.D.Tex.1971, 326 F.Supp. 459, 462, aff'd, 5 Cir. 1973, 477 F.2d 757; United States v. Troupe, W.D.Mo.1970, 317 F.Supp. 416, 420, aff'd, 8 Cir. 1971, 438 F.2d 117; United States v. Schletz, N.D.Ill.1968, 68–2 U.S.Tax Cas. 87, 555; United States v. Bowman, M.D.Pa.1964, 236 F.Supp. 548, 550, aff'd, 3 Cir. 1966, 358 F.2d 421; In Re Colton, S.D.N.Y. 1961, 201 F.Supp. 13, 16, aff'd sub nom. Colton v. United States, 2 Cir. 1962, 306 F.2d 633, cert. denied, 1963, 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499.

18. *See, e. g.,* United States v. Gurtner, 9 Cir. 1973, 474 F.2d 297; United States v. Cote, 8 Cir. 1972, 456 F.2d 142; United States v. Judson, 9 Cir. 1963, 322 F.2d 460; United States v. Kovel, 2 Cir. 1961, 296 F.2d 918; United States v. Brown, N.D.Ill.1972, 349 F. Supp. 420; United States v. Schmidt, M.D.Pa.1972, 343 F.Supp. 444; United States v. Jacobs, C.D.Cal.1971, 322 F. Supp. 1299; Bauer v. Orser, D.N.D. 1966, 258 F.Supp. 338; 8A Mertens, Law Of Federal Income Taxation § 47.51 (1971 rev.); 8 Wigmore, Evidence § 2301 (McNaughton rev. 1961) (1972 Supp.). *But see* Gariepy v. United States, 6 Cir. 1951, 189 F.2d 459, 463–64; Himmelfarb v. United States, 9 Cir., 175 F.2d 924, 939, cert. denied, 1949, 338 U.S. 860, 70 S.Ct. 103, 94 L.Ed. 527.

19. United States v. Gurtner, 9 Cir. 1973, 474 F.2d 297, 298; United States v. Johnson, 5 Cir. 1972, 465 F.2d 793, 795; In Re Bonanno, 2 Cir. 1965, 344 F.2d 830, 833; Bouschor v. United States, 8 Cir. 1963, 316 F.2d 451, 456; Honeywell, Inc. v. Piper Aircraft Corporation, M.D. Pa.1970, 50 F.R.D. 117, 120; Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corporation, E.D.Pa.1969, 294 F.Supp. 1148, 1150.

20. *See, e. g.,* Honeywell, Inc. v. Piper Aircraft Corporation, M.D.Pa.1970, 50 F.R.D. 117, 119.

torney translates his activities into those of an accountant. Olender v. United States, 9 Cir. 1954, 210 F.2d 795, 805–807; United States v. Chin Lim Mow, N.D.Cal.1952, 12 F.R.D. 433; see United States v. Schoeberlein, D.Md. 1971, 335 F.Supp. 1048; United States v. Higgins, S.D.W.Va.1966, 266 F.Supp. 593.

 Similarly, what is vital to the assertion of the privilege by an accountant employed by an attorney · is that he assist in providing legal advice rather than merely rendering accounting services;[21] and the specific nature of the proponent's burden is to establish that the accountant's role is essentially consultative. United States v. Gurtner, 9 Cir. 1973, 474 F.2d 297, 298–99.

The significant facts are undisputed. Vincent McCue retained Shumaker, Williams & Placey in 1969 to obtain a legal opinion regarding certain business and tax matters. Approximately eight months later, the attorneys employed Schmidt's firm to assist them in accumulating the business and financial information necessary to allow them to provide complete legal advice to McCue. Under the circumstances, it is immaterial that the particular information sought pertains to preparation of the McCues' 1969 income tax return.

Preparation of a return by an attorney pursuant to a bona fide attorney-client relationship is sufficiently within his professional legal competence to be subsumed by the privilege;[22] any attempt to limit the protection of the privilege along functional lines to account for Schmidt's participation in the process would distort the interactional realities of the relationship, i. e., to the extent that preparation of a return requires the exercise of legal judgment the adequate formulation of which itself is contingent upon prior consultative accounting, a legal process is involved within which related accounting services legitimately are included. See Note, Functional Overlap Between The Lawyer And Other Professionals: Its Implications For The Privileged Communications Doctrine, 1962, 71 Yale L.J. 1226, 1246, 1249.

 However, the privilege extends only to confidential communications [23] made by a client within the context of the relationship, not to the relationship itself. United States v. Goldfarb, 6 Cir., 328 F.2d 280, 282, cert. denied, 1964, 377 U.S. 976, 84 S.Ct. 1883, 12 L.Ed.2d 746; Gretsky v. Miller, D.Mass.1958, 160 F.Supp. 914; see United States v. Long, E.D.Mo.1971, 328 F.Supp. 233, 235–36. Therefore,

---

21. United States v. Kovel, 2 Cir. 1961, 296 F.2d 918, 922; see United States v. Gurtner, 9 Cir. 1973, 474 F.2d 297, 298–99; United States v. Cote, 8 Cir. 1972, 456 F.2d 142, 144; United States v. Judson, 9 Cir. 1963, 322 F.2d 460, 462; United States v. Brown, N.D.Ill. 1972, 349 F.Supp. 420, 425–29; United States v. Jacobs, C.D.Cal.1971, 322 F. Supp. 1299, 1303; United States v. Higgins, S.D.W.Va.1966, 266 F.Supp. 593; United States v. Higgins, S.D.W.Va.1966, 266 F.Supp. 596; Bauer v. Orser, D. N.D.1966, 258 F.Supp. 338, 342–43; Petersen, Attorney-Client Privilege In Internal Revenue Service Investigations, 1969, 54 Minn.L.Rev. 67, 86.

22. Colton v. United States, 2 Cir. 1962, 306 F.2d 633, 636, cert. denied, 1963, 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499; United States v. Merrell, N.D.N.Y. 1969, 303 F.Supp. 490, 492; United States v. Summe, E.D.Ky.1962, 208 F. Supp. 925, 927; Petersen, Attorney-Client Privilege In Internal Revenue Service Investigations, 1969, 54 Minn.L. Rev. 67, 92–97; see United States v. Higgins, S.D.W.Va.1966, 266 F.Supp. 593; United States v. Higgins, S.D.W. Va.1966, 266 F.Supp. 596. But see United States v. Gurtner, 9 Cir. 1973, 474 F.2d 297, 299; cf. Olender v. United States, 9 Cir. 1954, 210 F.2d 795, 805– 07. See generally United States v. Brown, N.D.Ill.1972, 349 F.Supp. 420, 428.

23. United States v. Tellier, 2 Cir., 255 F.2d 441, 447, cert. denied, 1958, 358 U.S. 821, 79 S.Ct. 33, 3 L.Ed.2d 62; Wilcoxon v. United States, 10 Cir., 231 F.2d 384, 386, cert. denied, 1956, 351 U.S. 943, 76 S.Ct. 834, 100 L.Ed. 1469; Robert M. Brittingham, 1971, 57 T.C. 91, 97; 8 Wigmore, Evidence § 2311 (McNaughton rev. 1961).

the inquiry presently before the court is whether, under all the circumstances,[24] a responsive answer to each question[25] might threaten disclosure of information communicated in professional confidence. *Cf.* United States v. Reynolds, 1953, 345 U.S. 1, 9, 73 S.Ct. 528, 97 L. Ed. 727; Hoffman v. United States, 1951, 341 U.S. 479, 486–87, 71 S.Ct. 814, 95 L.Ed. 1118.[26]

 Questions 7B–7I, 8D–2, 8E, 8F, 16A, 16B and 16D, insofar as they in-

quire into the identities of persons who prepared various portions of the 1969 return, and whether Schmidt's firm prepared any other returns for McCue, the nature of them, and upon whose authority they were prepared, must be answered. Absent special circumstances not present here,[27] neither the identity of any of the parties[28] nor the fact that legal services are performed[29] is privileged from disclosure. Colton v. United States, 2 Cir. 1962, 306 F.2d 633, 636–

24. Although no express request by a client for secrecy is necessary, the mere relationship does not create a presumption of confidentiality; · instead, all circumstances must be evaluated to determine whether, by implication, a communication was intended to be confidential. Robert M. Brittingham, 1971, 57 T.C. 91, 97; 8 Wigmore, Evidence § 2311 (McNaughton rev. 1961).

25. A photocopy of Government's Exhibit No. 2, containing the questions propounded to Schmidt, is appended to this memorandum.

Subsequent to the filing of the petition, certain questions were answered; issues relating to them have become moot. Colton v. United States, 2 Cir. 1962, 306 F.2d 633, 636, cert. denied, 1963, 371 U.S. 951, 83 S.Ct. 505, 9 L. Ed.2d 499. A controversy remains with respect to questions 7B–11, 14–17B, 19 and 20.

26. In evaluating whether a particular communication was intended to be confidential, it would be self-defeating to compel disclosure of the very information which the privilege is designed to protect.

In a prior reported decision, the court indicated that, in its opinion, this dilemma could be resolved most equitably if respondents were to submit, for *in camera* inspection, affidavits setting forth the responses which would be made but for the existence of the asserted privilege, and the factual bases upon which they predicate their contention that the information is confidential. United States v. Schmidt, M.D.Pa.1972, 343 F.Supp. 444.

Other courts have endorsed this procedure, Groh v. Decker, CA 5691 (W. D.Mich. Oct. 27, 1971), vacated and remanded on other grounds, 6 Cir. 1973, 473 F.2d 912; *accord*, United States v. Cote, 8 Cir. 1972, 456 F.2d 142, 145 n. 4; Schwimmer v. United States, 8 Cir.,

232 F.2d 855, 864, cert. denied, 1956, 352 U.S. 833, 77 S.Ct. 48, 1 L.Ed.2d 52; *see* United States v. Johnson, 5 Cir. 1972, 465 F.2d 793, 794; Chapman v. Goodman, 9 Cir. 1955, 219 F.2d 802, 807; United States v. Brown, N.D.Ill. 1972, 349 F.Supp. 420, 429; Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corporation, E.D.Pa.1969, 294 F.Supp. 1148, 1149–50; United States v. Donnelly, D.Nev.1965, 241 F.Supp. 200, 203–04; In Re Scranton Corporation, M.D.Pa. 1965, 37 F.R.D. 465, 467.

However, due to uncertainty whether *in camera* perusal might impinge upon the subjective freedom of consultation which the privilege encourages, submission of the requested affidavits was made discretionary. *See* United States v. Johnson, 5 Cir. 1972, 465 F.2d 793, 794. None were submitted.

27. *See, e. g.*, Baird v. Koerner, 9 Cir. 1960, 279 F.2d 623.

28. United States v. Ponder, 5 Cir. 1973, 475 F.2d 37, 39; In Re Semel, 3 Cir., 411 F.2d 195, 197, cert. denied, 1969, 396 U.S. 905, 90 S.Ct. 220, 24 L.Ed.2d 181; Colton v. United States, 2 Cir. 1962, 306 F.2d 633, 637, cert. denied, 1963, 371 U.S. 951, 83 S.Ct. 505, 9 L. Ed.2d 499; United States v. Long, E.D. Mo.1971, 328 F.Supp. 233, 236; United States v. Dickinson, D.Ariz.1969, 308 F. Supp. 900, aff'd per curiam, 9 Cir. 1970, 421 F.2d 702; United States v. Threlkeld, W.D.Tenn.1965, 241 F.Supp. 324, 326; Gretsky v. Miller, D.Mass.1958, 160 F.Supp. 914.

29. Including the fact that an attorney or member of his staff has prepared a tax return for a client. In Re Colton, S.D. N.Y.1961, 201 F.Supp. 13, 17, aff'd sub nom. Colton v. United States, 2 Cir. 1962, 306 F.2d 633, cert. denied, 1963, 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499.

38, cert. denied, 1963, 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499; United States v. Long, E.D.Mo.1971, 328 F.Supp. 233, 236; Kelly v. Simon, S.D.Cal.1962. 62–1 U.S. Tax Cas. 83, 882.

Questions 9B–9H and 10B–10F attempt to ascertain, respectively, from where the books and records used to secure information compiled on the return came; who instructed members of Schmidt's firm in their use; when the instructions were given; how the meeting at which they were given was arranged; who arranged it; what disposition was made of them after use by Schmidt's firm; their present location; the disposition made of accounting workpapers compiled during preparation of the 1969 return; their present location; whether they are available for Internal Revenue Service review; and, if not, why not.

█ This information relates to peripheral matters which are not confidential within the meaning of the attorney-client privilege.[30] *See* United States v. Pappadio, 2 Cir. 1965, 346 F.2d 5, 9, vacated and remanded on other grounds, 1966, 384 U.S. 364, 86 S.Ct. 1531, 16 L. Ed.2d 622; United States v. Long, E.D. Mo.1971, 328 F.Supp. 233, 236; Kelly v. Simon, S.D.Cal.1962, 62–1 U.S. Tax Cas. 83, 882.

In 17A, Schmidt is asked the amount of the fee charged by his firm for preparation of the McCues' 1969 individual income tax return. His answer merely indicates that two billings were rendered

to Shumaker, Williams & Placey for general consultative services provided them relative to their client, Vincent McCue. Petitioners consider this response inadequate, presumably desiring an estimate of that percentage of the aggregate fee reasonably allocated to preparation of the 1969 return.

█ Amounts paid for legal services ordinarily are not protected by the attorney-client privilege,[31] and there is no evidence from which to infer that such an estimate might threaten disclosure of a confidential communication. In formulating his response, Schmidt should take into account the extent to which his firm's participation in the preparation of the return involved the process of reciprocal interaction alluded to previously.

In addition, he will be required to answer 17B regarding the components of the fee. However, only general responses need be made, e. g., "interpretation of data," "formulation of recommendations to counsel," "mathematical computation," "implementation of counsel's instructions." *Accord*, Colton v. United States, 2 Cir. 1962, 306 F.2d 633, 636, cert. denied, 1963, 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499; United States v. Long, E.D.Mo.1971, 328 F.Supp. 233, 236.

The following questions will be considered together: 8A, 8A–1, 8B, 8C, 8C–1, 8D, 8D–1, 8E, 8F;[32] 9A; 16C; 19;[33] 20.

---

30. Although information regarding the location of documents may be the subject of a confidential communication, ordinarily it is not. 8 Wigmore, Evidence § 2309 (McNaughton rev. 1961). Respondents have made no showing which would modify application of the general rule.

31. United States v. Ponder, 5 Cir. 1973, 475 F.2d 37, 39; In Re Semel, 3 Cir., 411 F.2d 195, 197, cert. denied, 1969, 396 U.S. 905, 90 S.Ct. 220, 24 L.Ed.2d 181; United States v. Long, E.D.Mo. 1971, 328 F.Supp. 233, 236; United States v. Threlkeld, W.D.Tenn.1965, 241 F.Supp. 324, 326; In Re Colton, S.D. N.Y.1961, 201 F.Supp. 13, 17, aff'd sub

nom. Colton v. United States, 2 Cir. 1962, 306 F.2d 633, cert. denied, 1963, 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499; In Re Wasserman, D.D.C.1961, 198 F.Supp. 564, 566.

32. These questions presently are considered only insofar as they seek the sources of information used to obtain the income and expense figures appearing on certain schedules of the return. Analysis of those portions of 8B, 8C and 8C–1 which inquire into content is deferred.

33. It is unlikely that the information contained in these documents would be privileged from disclosure. Colton v. United States, 2 Cir. 1962, 306 F.2d 633, 638,

Each attempts to elicit sources of information underlying data appearing on a tax return. These are not confidential. In Re Colton, S.D.N.Y.1961, 201 F.Supp. 13, 18, aff'd sub nom. Colton v. United States, 2 Cir. 1962, 306 F. 2d 633, cert. denied, 1963, 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499. Indeed, it is important that the questions be answered because, to the extent that information used in preparing a return is derived from sources other than the clients or the clients' agents, the substance of it is not privileged. *See, e. g.,* United States v. Threlkeld, W.D.Tenn.1965, 241 F.Supp. 324, 326; 8 Wigmore, Evidence § 2317 (McNaughton rev. 1961).

Question 11 inquires whether Schmidt was given instructions during preparation of the 1969 return; by whom they were given; and the nature of them. His reply indicates that the firm was given specific instructions by Shumaker, Williams & Placey, but he refuses to reveal their substance. Because of the likelihood that disclosure of the instructions would provide a basis for inference of the tenor of information communicated in confidence by the McCues, the question need not be answered. *Accord,* United States v. Jacobs, C.D. Cal.1971, 322 F.Supp. 1299, 1303; *see* Henderson v. Heinze, 9 Cir. 1965, 349 F.2d 67, 70; Schwimmer v. United States, 8 Cir., 232 F.2d 855, 863, cert. denied, 1956, 352 U.S. 833, 77 S.Ct. 48, 1 L.Ed.2d 52; In Re Scranton Corpora-

tion, M.D.Pa.1965, 37 F.R.D. 465, 468; American Cyanamid Company v. Hercules Powder Company, D.Del.1962, 211 F.Supp. 85, 87; 8 Wigmore, Evidence § 2320 (McNaughton rev. 1961); *cf.* United States v. Brown, N.D.Ill.1972, 349 F. Supp. 420, 427–29.[34]

The same principle applies, *mutatis mutandis,* to questions 14 and 15A, in which petitioners ask, respectively, why a specific question on page one of the 1969 return was not answered, and why no pre-paid taxes were listed on lines 19–22, inclusive.

Questions 7C–7, 8A–2, 8B, 8C, 8C–1 and 15B seek substantive information related to that which appears on the return. Each threatens the disclosure of confidential communications,[35] either directly or by inference.

However, as previously noted, the substance of information acquired from sources other than the clients or their agents is not privileged. *See, e. g.,* United States v. Threlkeld, W.D.Tenn. 1965, 241 F.Supp. 324, 326; 8 Wigmore, Evidence § 2317 (McNaughton rev. 1961). Therefore, Schmidt will be directed to reveal from whom the information requested in 7C–7 and 15B came.[36] Upon compliance, he need only disclose its content to the extent that it is derived from sources without the protection of the privilege.

Similar considerations are dispositive of question 10A, in which Schmidt is requested to describe in de-

cert. denied, 1963, 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499; United States v. Schlegel, D.Neb.1970, 313 F.Supp. 177, 179–80; United States v. Merrell, N.D. N.Y.1969, 303 F.Supp. 490, 492–93; United States v. Threlkeld, W.D.Tenn. 1965, 241 F.Supp. 324, 326.

34. The holding in *Brown* is distinguishable because it is clear that Schmidt was employed by the attorneys in a consultative capacity to facilitate their provision of legal services.

35. Although it has been held that information related to that which appears on the return also must be disclosed, it better comports with the policy of the privilege to protect it; this encourages

full disclosure of all relevant information to the legal adviser and allows him to exercise his professional discretion regarding what to divulge. United States v. Schlegel, D.Neb.1970, 313 F.Supp. 177, 179–80; Robert M. Brittingham, 1971, 57 T.C. 91, 99 n. 5; *see* United States v. Threlkeld, W.D.Tenn.1965, 241 F. Supp. 324, 326. *But see* United States v. Cote, 8 Cir. 1972, 456 F.2d 142, 144–45; United States v. Merrell, N.D.N.Y. 1969, 303 F.Supp. 490, 492–93; *cf.* United States v. Schoeberlein, D.Md.1971, 335 F.Supp. 1048, 1057–58.

36. An equivalent testimonial obligation with respect to 8A–2, 8B, 8C and 8C–1 already has been acknowledged.

tail all workpapers, memoranda and notations compiled during preparation of the 1969 return. The workpapers should be protected insofar as they record clients' confidential communications;[37] but much of the information contained in them may have come from unprotected sources, and a blanket claim of testimonial immunity arising from a consultative employment relationship falls short of meeting respondents' burden to establish that the specific information they desire to withhold is within the scope of the privilege. United States v. Brown, N.D.Ill.1972, 349 F.Supp. 420, 429; *accord,* Colton v. United States, 2 Cir. 1962, 306 F.2d 633, 639, cert. denied, 1963, 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499.

Accordingly, Schmidt must disclose the sources of information contained in his workpapers; to the extent that they are unprotected, the substance of it must be revealed. *Accord,* Colton v. United States, 2 Cir. 1962, 306 F.2d 633, 639, cert. denied, 1963, 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499.

For the reasons given, and in the manner indicated, Schmidt will be directed to respond to all questions except 11, 14 and 15A.

This memorandum shall constitute findings of fact and conclusions of law in accordance with Rule 52(a) of the Federal Rules of Civil Procedure.

## APPENDIX

Proposed Questions to J. DONALD SCHMIDT Pursuant to the INTERNAL REVENUE SERVICE Summons Issued on 4/1/71 by JAMES W. MEADE, JR., Special Agent

Background:

Schooling—Where, When and extent
Certified—What State and when

Association with—SCHMIDT, NENNINGER & CO. and prior experience in practice

Preparation of Returns for VINCENT C. & ELIZABETH A. McCUE:

1. Do you know: A. VINCENT C. McCUE, 460 St. Johns Drive, Camp Hill, Pa.

 B. ELIZABETH A. McCUE, 460 St. Johns Drive, Camp Hill, Pa.

2. A. When and under what circumstances did you meet VINCENT C. McCUE?

 B. When and under what circumstances did you meet MRS. McCUE?

3. A. What, if any, services have you or your firm performed for VINCENT C. McCUE?

 B. What, if any, services have you or your firm performed for ELIZABETH A. McCUE?

 C. By whom were you engaged?

 D. When (date) were you engaged?

 E. What were you engaged to do?

 F. Explain the circumstances and details of such request?

 G. Was agreement in writing?

 H. Is a copy of agreement available for our review?

 I. When and where?

4. If you met with Mr. McCUE on more than one occasion during your employment in this matter, state (1) the date of each meeting; (2) the place of each meeting and (3) the persons present at each meeting.

5. If anyone other than you, the McCUES or an attorney representing MR. McCUE, was present, at one or more of these meetings, state in substance what MR. McCUE said on those occasions.

37. United States v. Cote, 8 Cir. 1972, 456 F.2d 142, 144; United States v. Judson, 9 Cir. 1963, 322 F.2d 460, 462; United States v. Higgins, S.D.W.Va. 1966, 266 F.Supp. 596; Bauer v. Orser, D.N.D.1966, 258 F.Supp. 338, 342–43; *accord,* Colton v. United States, 2 Cir. 1962, 306 F.2d 633, 639, cert. denied, 1963, 371 U.S. 951, 83 S.Ct. 505, 9 L. Ed.2d 499; Kelly v. Simon, S.D.Cal. 1962, 62–1 U. S. Tax Cas. 83, 882; *see* United States v. Brown, N.D.Ill.1972, 349 F.Supp. 420, 429; United States v. Higgins, S.D.W.Va.1966, 266 F. Supp. 593.

6. I show you a 1969 U.S. Individual Income Tax Return, Form 1040, in the name of VINCENT C. and ELIZABETH A. McCUE, 460 St. Johns Road, Camp Hill, Pa., bearing DLN 23–22211473359.

 A. Would you examine this document and state whether this return was prepared by your firm?

 B. Is the firm signature in your handwriting?

 C. If not, do you recognize the handwriting and will you state who signed this return for the firm?

 D. How was the determination made as to who will sign an individual return for the firm?

 E. Was that the situation on April 14, 1970? If not, please explain.

7. A. Is the handwriting (printing) of information and figures on page 1 of the return, yours?

 B. If not, will you state who prepared this page of the return?

 C. Schedule A?
 (Specifically note item amounts):
 C–1 914.73
 C–2 84.00
 C–3 900.00
 C–4 141.39
 C–5 141.56
 C–6 1,182.95
 C–7 With respect to Item 15 of Schedule A, please state to whom "Interest Expense —Home Mortgage . . . 900.00" was paid.

 D. Schedule C—Racing?

 E. Schedule C—Insurance Agent?

 F. Depreciation Schedule?

 G. Schedule D?

 H. Schedule SE?

 I. Schedule T?

8. What was the source of information used for the income and expense figures shown on:

 A. Schedule C—Racing

 1. Discrepancy between Gross Receipts and Forms 1099 by $885.00 overstatement.

 2. Describe such records in detail.

 B. Schedule C—Insurance Agent. Describe in detail.

 C. Schedule C–2—Depreciation— Describe in detail.

 1. What was the basis for Item "4"—Depreciation allowed or allowable in prior years?

 D. Schedule D—Part III

 1. What was the source of information for each of the items listed in each column "a" through "g"?

 2. Who made the computations?

 E. Where did they come from? computation?

 F. Schedule T—Who made the computation?

9. A. What books and records were used to secure the information compiled on this return?

 B. Where did they come from¦

 C. Who instructed you or your firm member in use of the contents of such books and records?

 D. When was this done?

 E. How was this meeting arranged?

 F. By whom?

 G. What disposition was made of the books and records after use by your firm?

 H. Where are the books and records now?

10. A. Describe in detail the workpapers, memoranda and notations compiled in preparation of this 1969 return.

 B. What disposition was made of those workpapers?

 C. Where are the workpapers now?

 D. Are they available?

E. For Internal Revenue Service review?

F. If not, why not?

11. Were you given instructions in regard to the preparation of the Mc-CUE 1969 return? If so, what specifically were the instructions and by whom given?

12. With whom did you consult or discuss the engagement to prepare McCUE'S 1969 return?

 A. In your firm?

 B. Beyond your firm?

13. With whom were the results and final return figures reviewed and discussed?

 A. Within your firm?

 B. Beyond your firm?

 C. With MR. McCUE or

 D. With MRS. McCUE?

14. On page 1, immediately below the taxpayer's name and address, the question concerning the filing of a 1968 return in the taxpayer's names was not answered. Explain why not.

15. A. Why was there no pre-paid taxes listed on lines 19–22, inclusive?

 B. How were you advised that there were no pre-paid taxes?

16. A. Did your firm prepare any other returns for McCUE at or about the time of the preparation of the 1969 individual income tax return?

 B. What were they?

 C. From what information?

 D. On whose authority?

17. A. What fee was charged by your firm for preparing McCUE'S 1969 income tax return?

 B. What did this fee include?

 C. Who decided the fee amount?

 D. Who paid the fee, and in what form (cash, check or service insurance)?

18. Did your firm prepare any returns for VINCENT C. and/or ELIZA-

BETH A. McCUE for any or all of the years 1966, 1967 and 1968? If so, explain:

 A. When prepared?

 B. From what information?

 C. By whom supplied?

 D. By whose order?

19. In the preparation of the 1969 return did you have available retained copies of U. S. Individual Income Tax Returns on behalf or either or both MR. and MRS. McCUE? If so, for what specific years?

20. Do you recall whether there was submitted to you in conjunction with the preparation of the 1969 return of MR. and MRS. McCUE, any written documents from any financial or business entity which reflect either income or expense items of the taxpayers for that year? If so, state to the best of your recollection the name or names of the business or financial entity and addresses.